**Morgan Earnest BLACK, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–83–00366–CR.**

Court of Appeals of Texas,
Dallas.

Oct. 12, 1987.

Dissenting Opinion Oct. 13, 1987.

---

Thomas W. Mills, Dallas, for appellant.

Kathi Alyce Drew, Dallas, for appellee.

Before DEVANY, HECHT[1] and McCRAW[2], JJ.

## ON REMAND FROM THE COURT OF CRIMINAL APPEALS

HECHT, Justice.

A jury convicted Morgan Earnest Black, Jr. of aggravated possession with intent to deliver a controlled substance—viz, over $1 million worth of phencyclidine—and assessed punishment at 12 years' imprisonment. A panel of this court reversed Black's conviction because the district court failed to apply the law of parties to the facts of the case in the jury charge. *Black v. State*, No. 05–83–00366–CR (Tex. App.—Dallas Dec. 12, 1984) (unpublished). The court of criminal appeals granted the State's petition for discretionary review, vacated the judgment of this court, and remanded the case for us to "consider whether the charging error was harmless." *Black v. State*, 723 S.W.2d 674, 676 (Tex. Crim.App.1986). We conclude that it was, and accordingly, affirm the judgment of the district court.

### *Scope of Remand*

■ Ambiguity in the court of criminal appeals' instructions to us necessitates that

---

1. The Honorable Nathan L. Hecht, Justice, succeeded the Honorable Patrick C. Guillot, a member of the original panel. Justice Hecht has reviewed the briefs and record before the Court.

2. The Honorable John L. McCraw, Jr., Justice, succeeded the Honorable Jon C. Sparling, a member of the original panel. Justice McCraw has reviewed the briefs and record before the Court.

we first determine the scope of our responsibility on remand.

What is clear is that we must analyze whether the trial court's erroneous failure to charge the jury on the application of the abstract law of parties to the facts of the case actually harmed Black. The panel of this court which first heard Black's appeal did not perform this analysis, apparently believing that the error automatically required reversal whether harmless or not.[3] After the panel decision issued and while the State's petition for discretionary review was pending before the court of criminal appeals, that court ruled in other cases that only charging error which actually harms the defendant requires reversal. The court then held that this case must be re-examined in light of those rulings, stating:

> Therefore, although the Court of Appeals' holding that the trial court erroneously failed to apply the law of parties to the facts of the case is correct, the Court of Appeals must consider whether the charging error was harmless.

*Black*, 723 S.W.2d at 676.

What is not clear is whether we are to consider the entire record or only the evidence in assessing whether the charging error was harmless. The court of criminal appeals considered the identical error in *Govan v. State*, 682 S.W.2d 567, 570–571 (Tex.Crim.App.1985), and held that:

> because the evidence in the instant case clearly supports the appellant's guilt as a principal actor, the error of the trial court in charging on the law of parties was harmless error.

Citing *Govan*, the court held in *Brown v. State*, 716 S.W.2d 939, 945–946 (Tex.Crim. App.1986):

any error in charging on the law of parties is harmless if the evidence clearly supports appellant's guilt as a primary actor.

The court remanded the instant case to us "for consideration in light of *Govan*, supra, and *Brown*, supra." *Black*, 723 S.W.2d at 676. This would seem to indicate that we are to limit our review to the evidence in the case.

Beclouding the matter is the court of criminal appeals' restatement of the harmless error rule in this case:

> Where the evidence clearly supports a defendant's guilt as a principal actor, any error of the trial court in charging on the law of parties is harmless. *Brown*, supra; *Govan*, supra. Cf. Art. 36.19, V.A. C.C.P. (1981); *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App.1985) (standard for reviewing charging error for harm).

*Black*, 723 S.W.2d at 675. In a footnote the court explains the standard established in *Almanza*, which was decided after *Govan* and before *Brown*, but was not cited in *Brown:*

> In *Almanza* supra, this Court recognized that Article 36.19, V.A.A.C.P. (1981), requires this Court to reverse convictions for charging error only if actual harm to a defendant occurred.... The presence or absence of actual harm is determined through an examination of the entire record. Thus, this Court abandoned the former rule of automatic reversal in favor of a practical standard requiring the demonstration of actual harm.

---

**3.** Presiding Judge Onion of the court of criminal appeals stated in his dissenting opinion that the court of appeals "held the error was harmful because of the penalty assessed, and said so on the very face of its brief opinion." *Black*, 723 S.W.2d at 681. The prior unpublished panel opinion of this court reads in full:

> This is an appeal from a conviction for possession with intent to deliver a controlled substance. For the reason below, we reverse and remand.
>
> In his dispositive ground of error, appellant contends that the trial court erred in failing to apply the law of parties to the facts. While

the court's charge did contain the abstract definition of the law of parties, it did not instruct the jury as to the application of the law, e.g., that if appellant intended to promote or assist the commission of an offense, or encouraged another, he would be criminally responsible. Under the authority of *McCuin v. State*, 505 S.W.2d 827 (Tex.Crim.App.1974), we sustain this ground and reverse and remand for new trial.

We do not read this opinion to hold that the charging error was harmful either because of the penalty assessed or for any other reason.

... In *Almanza,* supra, this Court made it clear that charging error must be reviewed in the context of the entire record....

Using *Almanza,* supra, in its proper context, *Govan,* supra, only requires reversal of preserved charging error on the law of parties if the law of parties was actually necessary for the jury to decide the case. If the evidence was sufficient to support a conviction of a defendant as a principal, then a jury would rationally convict the defendant as a principal rather than as a party.

*Black,* 723 S.W.2d at 675–676 n. 2. From this explanation it is difficult to tell whether any harm from a charging error on the law of parties must be determined from the entire record or only from the evidence.

This distinction determines the issue to be addressed. If harm is to be determined from the evidence only, then the issue is whether the evidence is sufficient to find guilt as a principal rather than as a party, as stated in *Govan.* Thus, the *Govan* test for harm from a charging error on the law of parties is simply sufficiency of the evidence. On the other hand, if harm is to be determined from the entire record, the issue is not simply sufficiency of the evidence but whether "the defendant has not had a fair and impartial trial", as stated in *Almanza* and article 36.19, Texas Code of Criminal Procedure. The *Almanza* test is broader than *Govan* and requires an analysis of not only the evidence but the entire record.

We see no reason to apply a different standard in assessing harm from a charging error on the law of parties than applies to charging errors generally. Relevant in assessing the harm of a charging error is not only the evidence but the emphasis and interpretation of the evidence under the charge in closing argument, as well as the entire record. We therefore conclude that our instruction to analyze whether the error in this case is harmless includes the responsibility to consider the entire record.

**4.** Cooper, along with John Henry McCovery, were tried as co-defendants with Black.

## The Evidence

Acting on information available to him, Roy Wunderlich, a Los Angeles police officer assigned to investigate clandestine narcotics laboratories used to manufacture illicit drugs, began surveillance on the Los Angeles home of Frederick Gene Cooper.[4] Cooper drove a motor home registered in his name to a repair shop, apparently to prepare the vehicle for a trip. From there Cooper drove the motor home to the Los Angeles home of Willie Sanford, also known as "Black Willie", where he met Black and John Henry McCovery. Black and McCovery loaded luggage into the motor home while Cooper loaded two five-gallon black cans which appeared to be heavy and full. Cooper, Black and McCovery next drove to Sanford's car wash, where Cooper picked up three white plastic five-gallon buckets and put them in the motor home. The three then began to circle around the area, stopping in the middle of streets and on corners for three to five minutes at a time, making U-turns, and watching traffic. Wunderlich concluded that the trio was attempting to ensure that they were not being followed. After 45 minutes the motor home drove onto the freeway and headed east out of Los Angeles.

From his five years' experience investigating 150 illicit drug laboratories, Wunderlich knew that the manufacture of phencyclidine[5] required, among other things, large amounts of ether, commonly packaged in black five-gallon cans, a scale to measure the chemical ingredients, and buckets in which to mix the chemicals. The manufacture of phencyclidine is a very odorous process and therefore conducted in isolated areas to avoid detection. At the time, Los Angeles police were cracking down on phencyclidine manufacturers and distributors. Knowing all this, and from the information he had received and what he had seen following the motor home around Los Angeles, Wunderlich was con-

**5.** Phencyclidine is a controlled substance, referred to in the vernacular of drug users as "PCP" or "angeldust".

vinced that Cooper, Black and McCovery intended to travel to Dallas, manufacture a large quantity of phencyclidine, and return to Los Angeles to sell it.

For 36 hours straight, Wunderlich, sometimes assisted by other police vehicles and aircraft, dogged the trio in the motor home across California, Arizona, New Mexico and Texas, stopping only briefly for gas and food, until they arrived at Cooper's brother's home in Dallas. About an hour after the motor home stopped at the house, it left to pick up a black male at an airline terminal at the Dallas/Fort Worth Airport, and then returned to the house.

Joined by Dallas police officers, Wunderlich set up constant surveillance of the house and motor home.[6] The house was located on a cul-de-sac, and behind the house was a large, open field. The night following the arrival of the motor home, Wunderlich walked across the field to the house. As far as a mile from the house he could smell the odor of phencyclidine being manufactured. Wunderlich testified:

> [T]o describe it, would be a sweet, pungent odor. And it's like anything else, when somebody's making chocolate chip cookies, you know that they're making chocolate chip cookies. When someone's making PCP, I know they're making PCP.
>
> And I've never smelled anything else that smells like PCP when it's being manufactured. Quaalude has its own odor, cocaine has its own odor, methamphetamine has its own odor. PCP smells exactly like PCP being manufactured.

For two hours he walked around behind the house, at times within fifty feet of it, until he was certain the odor was emanating from there.

Shortly before dawn, three men, including Black, left in a van to take the man that had been picked up at the airport the day before back to the airport. The three then drove to another residence, to where the motor home had been moved the day

before, boosted it to start it, and returned to Cooper's brother's home about 8:10 a.m.

Three hours later the motor home left the residence and headed south on the expressway. Within ten minutes police stopped the vehicle on orders from the surveillance teams. As officers approached the motor home they smelled a strong odor, which was even stronger inside. Cooper was driving. Black was riding in the front passenger seat. McCovery was in the back of the motor home asleep. All three were arrested. A search of the vehicle revealed a professional set of scales, a sawed-off shotgun, the same luggage Wunderlich had seen Black and McCovery put in the vehicle in Los Angeles, and two trash bags, each containing one of the five-gallon black cans Wunderlich had seen loaded into the van at Sanford's home in Los Angeles. The two cans contained 1,519 grams of pure phencyclidine.

Drug abusers ingest phencyclidine by smoking cigarettes which have been dipped in it, each carrying an average dose of 40 milligrams. The total amount of phencyclidine found in the motor home could dope 37,900 cigarettes for sale on the street at $30 apiece. Thus, the street value of the phencyclidine found in the motor home was $1,137,000.

### The Record

During the voir dire examination of the venire the prosecutor stated for the prospective jurors the elements it would be required to prove each defendant guilty as a principal actor rather than as a party. He then gave a rather routine summary of the law of parties using a bank robbery as an illustration, and asked if anyone disagreed with that law. However, the focus of the prosecutor's remarks was on the defendants' actions as co-principals, not as parties.

Likewise in his closing argument the prosecutor emphasized each defendant's conduct as a principal. Although the prosecutor again referred to the law of parties

---

6. At times police kept out of sight of the house and motor home so as not to be spotted. Although they were not always able to see people

entering and leaving the vehicle and house, they were able to monitor the motor home and other vehicles coming and going.

and stated that the State need prove no more than that Black and McCovery were parties to Cooper's conduct, the emphasis of the argument, particularly as it referred to the evidence, was on the actions of each defendant warranting conviction as a principal.[7]

### Charging Error Harmless

■ The court of criminal appeals has only very recently restated the principles for proving possession of a controlled substance as a principal. *Humason v. State,* 728 S.W.2d 363, 365 (Tex.Crim.App.1987). The State must prove beyond a reasonable doubt that a defendant intentionally or knowingly exercised actual care, control, custody or management over the contraband, knowing that it was contraband. Showing a defendant to have been in the vicinity of contraband is not enough. The State must prove an affirmative link between the defendant and the contraband showing both control and knowledge.

As in any case, proof may be based upon circumstantial evidence which excludes every reasonable hypothesis other than guilt. *Humason,* 728 S.W.2d at 366.

> The rules of circumstantial evidence do not require that circumstances should to a moral certainty actually exclude every hypothesis that the act may have been committed by another person, but that the hypothesis is a reasonable one consistent with the facts proved and the circumstances, and the supposition that the act may have been committed by another person must not be out of harmony with the evidence.

*Moore v. State,* 640 S.W.2d 300, 302 (Tex. Crim.App.1982).

■ The evidence was sufficient to convict Black as a principal. He made a 36–hour nonstop trip from Los Angeles to Dallas in a motor home conspicuously loaded with some of the unusual ingredients to manufacture phencyclidine. In Dallas he stayed at least part of the time at a home where the unique and pungent odor of phencyclidine being manufactured could be smelled a mile away. He was arrested in the motor home with more than a million dollars' worth of the illegal drug that smelled so strong the police noticed it as they approached the vehicle.

Although much of the evidence is circumstantial, we conclude that it excludes every reasonable hypothesis for Black's behavior alternative to guilt. It is not reasonable, contrary to Black's suggestion, to conclude from the evidence that he was only along for the ride. One hardly expects to find a hitchhiker in a motor home with a million dollars' worth of redolent contraband. This case is very different from *Humason,* in which the defendant was arrested driving a vehicle containing a duffle bag with an almost invisible amount of cocaine inside. Had there been so minute a quantity of controlled substance in the motor home, it might not be unreasonable to suppose that by merely sitting in the passenger seat Black did not exercise care, custody, management or control over the substance. But when the quantity and value of the controlled substance in the vehicle are as enormous as they are here, and the presence of the substance made so obvious by its overpowering smell, such supposition becomes most unreasonable. It is made more unreasonable still by the length of the trip and the fact that Black stayed with his traveling companions and the contraband while in Dallas. The evidence allows but one reasonable conclusion: Black knew what was going on and actively participated in its as a principal.

---

7. Judge Teague of the court of criminal appeals stated in his dissenting opinion:

   With specific regard to the jury argument, it is true that vicarious culpability was not strenuously urged by the State as a distinct theory upon which the jury might predicate a finding of guilt. In spite of my belief that the probable impact of argument by counsel on jury deliberations cannot fairly be gauged without rank speculation, I will concede that juries as a whole are probably somewhat less likely to convict upon a theory not urged by either party than upon a theory strenuously urged. However, without speculating, I am unable to say how much less likely, if at all, it was in this case. Accordingly, I am inclined to afford the circumstance of jury argument *little weight in my harm analysis. Black,* 723 S.W.2d at 684.

The evidence as to Cooper, Black and McCovery, individually, was not so different that the jury was likely to convict one or more of them as parties only. All that McCovery did, Cooper and Black joined in. The additional evidence as to Black was that he was seen riding in the front passenger seat of the motor home on two occasions, and was one of the three men on the second trip to the airport in Dallas. The additional evidence as to Cooper was that he loaded the black cans into the motor home in Los Angeles, he was seen driving the motor home which he owned, and his brother owned the house in Dallas where the phencyclidine was manufactured.

Neither the argument nor any other part of the trial so emphasized party culpability as to raise the likelihood that the jury convicted Black as a party rather than as a principal. Although the prosecutor did mention the law of parties, in argument and voir dire, the focus of the trial was on individual responsibility.

We therefore conclude from the record as a whole that Black received a fair and impartial trial, and that the evidence was sufficient to convict him as a principal. The trial court's error in failing to apply the law of parties to the evidence in his instructions to the jury was therefore harmless. The judgment of the trial court is, accordingly, affirmed.

McCRAW, J., dissents.

McCRAW, Justice, dissenting.

I dissent for two reasons. First, the majority has exceeded the scope of the Court of Criminal Appeals' mandate in deciding this case on remand. Second, the state of the evidence does not support the majority's conclusion that the charging error is harmless. I would reverse the judgment of the trial court and remand for new trial.

### The Mandate

The Court of Criminal Appeals, in twenty-six words, succinctly and specifically restricted the scope of review on remand: "The judgment of the Court of Criminal Appeals is vacated and remanded to the Court of Appeals for consideration in light of *Govan v. State,* 682 S.W.2d 567 (Tex. Crim.App.1985), supra, and *Brown v. State,* 716 S.W.2d 939 (Tex.Crim.App.1986), supra." *Black v. State,* 723 S.W.2d 674, 676 (Tex.Crim.App.1986).

I do not find this mandate confusing. Certainly, the Court of Criminal Appeals cited *Almanza v. State,* 686 S.W.2d 157 (Tex.Crim.App.1984), in its opinion. The Court also cited six other cases in the brief opinion. In its direction to this Court, however, the Court of Criminal Appeals specifically directs us to consider the case *sub judice* in light of the standard enunciated in *Govan* and *Brown.* These cases hold that any error of the trial court in charging on the law of parties is harmless if the evidence clearly supports a defendant's guilt as a principal actor. *Brown,* 716 S.W. 2d at 946; *Govan,* 682 S.W.2d at 571. I will, therefore, follow the Court of Criminal Appeals' mandate by reviewing the evidence to determine whether there is sufficient evidence to support appellant's conviction as a principal actor.

### Sufficiency of the Evidence

Appellant was convicted of aggravated possession of a controlled substance with intent to deliver. The indictment alleged that appellant intentionally and knowingly possessed a controlled substance in an amount more than 400 grams with intent to deliver. When charging a defendant with unlawful possession of a controlled substance, the State must prove: (1) that the defendant exercised actual care, control, custody or management of the contraband; and (2) that the defendant knew that what he possessed was contraband. *Humason v. State,* 728 S.W.2d 363, 365 (Tex.Crim. App.1987); *Payne v. State,* 480 S.W.2d 732, 734 (Tex.Crim.App.1972); *Baty v. State,* 734 S.W.2d 62 (Tex.App.—Dallas 1987). *See also* TEX.REV.CIV.STAT.ANN. art. 4476–15, § 1.02(34) (Vernon Supp.1987).

The Texas Penal Code has abolished the distinction between "principals" and "accomplices." *See* TEX. PENAL CODE

ANN. § 7.01(c) (Vernon 1974). Instead, a person is criminally liable as a party to an offense if the offense is committed: 1) by his own conduct; 2) by the conduct of another for whom he is criminally responsible under TEX. PENAL CODE ANN. § 7.02 (Vernon 1974); or 3) by both. TEX. PENAL CODE ANN. § 7.01(a) (Vernon 1974). The case law has preserved the traditional language of "principal" and lesser actors to a certain extent, referring to one who commits a crime by his own conduct as a principal, or primary actor. *See, e.g., Black,* 723 S.W.2d at 675; *Brown,* 716 S.W.2d at 946.

Under the Court of Criminal Appeals' mandate, I must examine the evidence to determine whether appellant, *by his own conduct,* exercised actual care, custody, control or management of more than 400 grams of PCP with intent to deliver. My review of the record reveals that Cooper prepared the motor home registered in his name for a trip, and then drove to the house of "Black Willie" to pick up appellant and another man. Appellant loaded his suitcases into the van, and Cooper loaded two five-gallon drums which a person experienced in the illicit drug trade would know to contain ether used in the manufacture of PCP. I find no evidence in the record to suggest that appellant loaded the drums into the van, or that he directed Cooper to load them, so as to constitute actual care, custody, management or control over them. I note this fact in light of the majority's emphasis on possession of the ingredients for PCP as dispositive evidence of guilt of possession of PCP. I am not convinced that such a connection can be drawn.

A police officer followed Cooper's van for thirty-six hours, but at no time was he able to get close enough to the van to observe appellant's conduct in the van. Again, the majority places great weight upon appellant's presence in the van before the controlled substance was in the van. While such evidence may be relevant to appellant's guilt under the law of parties, particularly if he drove the van, I am unwilling to place such importance upon this fact when examining appellant's guilt as a principal actor. After thirty-six hours, the van arrived at Cooper's brother's house in Dallas. The police set up constant surveillance of the house and Cooper's van, keeping well out of sight of the house. The police could not see people entering or leaving the house and could not see inside the house. One police officer, experienced in drug cases, testified that he could smell the distinctive odors associated with the manufacture of PCP emanating from the house.

Cooper, appellant and another, man left Cooper's brother's house in Cooper's van and headed south on the expressway. The police stopped the van and could smell a strong odor when approaching the van. Cooper was driving the van and appellant was riding in the front passenger seat. A search of the vehicle revealed 1,519 grams of PCP. There is no evidence in the record that appellant attempted to flee, that he made furtive gestures toward the contraband, or that he was under the influence of drugs. No drugs were found on his person.

The majority correctly states that, in order to support a conviction for possession of a controlled substance as a principal actor, the State must prove beyond a reasonable doubt that a defendant intentionally or knowingly exercised actual care, control, custody, or management of the illicit drugs, knowing that it is contraband. *Humason,* 728 S.W.2d at 365. It is not enough for the State to show that a defendant was merely in the vicinity of a controlled substance; instead, the State must provide evidence of "affirmative links" between a defendant and a controlled substance. *Humason,* 728 S.W.2d at 365; *McGoldrick v. State,* 682 S.W.2d 573, 578 (Tex.Crim.App.1985).

In *Humason,* the accused, the sole occupant of a truck, was stopped by the police for speeding. He was arrested for driving with a suspended license. A search of the truck revealed an unzipped gym bag on the passenger seat next to where appellant had been sitting. The bag contained clothing and a clear vial containing a white powder residue which testing revealed to be cocaine. The Court of Criminal Appeals held

that the State had failed to meet its burden of proving beyond a reasonable doubt that Humason possessed the cocaine. The Court stated that the circumstantial evidence did not exclude every reasonable hypothesis other than guilt. *Humason,* 728 S.W.2d at 367.

I would hold that there is no evidence in the record showing appellant's care, custody, management or control of the contraband. The evidence merely shows that appellant was in a van in which there was a great deal of contraband, that he had travelled for thirty-six hours in a van allegedly carrying the ingredients for making the illicit drugs, and that he stayed for part of the time he was in Dallas in a home where PCP was allegedly manufactured. It is not enough for the State to prove that appellant was merely present in the vicinity of the PCP. *Humason,* 728 S.W.2d at 365. The evidence also showed that PCP ingredients, PCP manufacture, and PCP itself have unique and distinct odors. There is no evidence showing that appellant knew the significance of these odors. *See Humason,* 728 S.W.2d at 367 (no proof in the record that defendant was aware of the properties of a particular controlled substance). In any event, evidence that appellant was aware that the smell was associated with PCP would be relevant to the issue of his knowledge that the items were contraband; however, that knowledge alone does not constitute care, custody, management or control of the illicit drugs.

Further, I must take issue with a statement of the majority. The majority avers that the evidence as to guilt of Cooper and as to guilt of appellant is not significantly different. I disagree. Cooper was seen loading the barrels of ether; the van was registered in Cooper's name; Cooper was the only person the police saw driving the van; the men went to Cooper's brother's house. This evidence, together with the other evidence discussed in this opinion, shows Cooper's culpability as a principal actor. This evidence is lacking as to appellant.

Because the evidence presented does not support appellant's guilt as a principal ac-

tor, as required by *Govan* and *Brown,* I must conclude that the trial court's error in failing to charge on law of parties was harmful beyond a reasonable doubt. Consequently, the judgment of the trial court should be reversed and the cause remanded for new trial.