Kevin Menard JONES, Appellant,

v.

The STATE of Texas, Appellee.

No. 05-88-00208-CR.

Court of Appeals of Texas, Dallas.

May 9, 1989.

Discretionary Review Granted Oct. 4, 1989.

John D. Nation, Dallas, for appellant.
Teresa Tolle, Dallas, for appellee.

OVARD, Justice.

Kevin Menard Jones appeals his conviction for aggravated robbery. The court assessed punishment at twenty-seven years' confinement and a $10,000 fine. In three points of error, appellant contends that: (1) the evidence is insufficient to support his conviction; (2) the trial court's charge failed to apply the law of parties to the facts; and (3) the State erred in arguing that defense witnesses had fabricated testimony. We affirm the judgment of the trial court.

The evidence established that on November 9, 1985, Sandra Tubbs was working as a cashier at the Gulf Majek Market in Lancaster, Texas. At approximately 8:25 a.m., three males later identified as appellant, Kevin Jones, Clarence Rhynes, and Stanley Coleman entered the store together. Rhynes proceeded to the ice cream machine, Coleman went to the counter, and appellant stood near the only door. Coleman asked for a package of cigarettes and Tubbs rang up the sale. Coleman paid a part of the cost and asked Rhynes for the balance. Rhynes gave Coleman the money, and then went behind the counter where he pointed a gun directly at Tubbs' face. Coleman and appellant remained at their original locations in the store. Rhynes said, "Give me the money, all of the money" and, as Tubbs attempted to remove the cash tray, Rhynes began taking the bills from the tray. Meanwhile, appellant moved closer to the counter but continued looking out the door.

Appellant and Coleman then went behind the counter; appellant removed all the coins from the cash tray and Coleman took several cartons of cigarettes. The men then departed. Appellant was the last of the three men to leave the store and, as he exited, he took a display of watches.

A fingerprint expert positively identified a latent fingerprint taken from the underside of the cash register money tray as appellant's. Tubbs testified that the only two men who touched the money tray were Rhynes and appellant.

I.

Appellant first contends that, when viewed in light of the jury charge, the evidence is insufficient to support the conviction. He also complains that, due to the trial court's failure to apply the law to the facts, he was egregiously harmed by the charge. The application paragraph of the charge reads as follows:

> Now, bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt that the defendant, KEVIN MENARD JONES, on or about the 9th day of November, A.D., 1985, in the County of Dallas and State of Texas, as alleged in the indictment, did then and there, while in the course of committing theft of property and with intent to obtain and maintain control of said property of SANDRA TUBBS, to-wit: current money of the United States of America, without the effective consent of SANDRA TUBBS and with intent to deprive the said SANDRA TUBBS of said property, did then and there knowingly or intentionally threaten or place SANDRA TUBBS in fear of imminent bodily injury or death, and the defendant did then and there use or exhibit a deadly weapon, to-wit: a firearm, you will find the defendant guilty of the offense of aggravated robbery and so say by your verdict.

The jury charge also contains an abstract instruction on the law of parties:

All persons are parties to an offense who are guilty of acting together in the commission of the offense. A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or both.

A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. Mere presence alone will not constitute one a party to an offense.

The Texas Code of Criminal Procedure requires that the jury be provided with a written charge distinctly setting forth the law applicable to the case. TEX.CODE CRIM.PROC.ANN. art. 36.14 (Vernon Supp.1989). In this case, appellant's criminal responsibility for the aggravated robbery was based solely on the law of parties, because it is undisputed that appellant did not personally possess a weapon or threaten anyone. Therefore, the trial court should have included the law of parties in the application paragraph of the charge. The failure to do so was error.

We must now decide whether this was charging error which resulted in "trial error" or, whether the error resulted in "insufficiency of the evidence." The answer to this inquiry depends upon whether we must measure the sufficiency of the evidence against the entire charge or against *only* the application paragraph.

■ If we are confronted with "trial error," appellant's conviction was based on a defect which had nothing to do with his guilt or innocence. *See Messer v. State,* 729 S.W.2d 694, 699–700 (Tex.Crim.App. 1986). In the past, incorrect jury instructions have been viewed as "trial error." *Messer v. State,* 729 S.W.2d at 700. In instances of "trial error," the double jeopardy clause does not preclude a retrial. *Id.* Distinguished from "trial error" is "insufficiency of the evidence" which is a determination that the State has failed to prove its

case. The result is that the defendant must be acquitted and the double jeopardy clause prohibits a retrial. *Burks v. United States,* 437 U.S. 1, 16, 98 S.Ct. 2141, 2149–50, 57 L.Ed.2d 1 (1978); Seymore & Thielman, *Appellate Reversal for Insufficient Evidence In Criminal Cases: The Interaction of the Proof and the Jury Charge,* 16 Am.J.Crim.L. _____ (1989).

Several cases have addressed the issue of what standard must be used to define error in a jury charge. *Boozer v. State,* 717 S.W.2d 608 (Tex.Crim.App.1984); *Ortega v. State,* 668 S.W.2d 701 (Tex.Crim.App. 1983) (op. on reh'g); *Benson v. State,* 661 S.W.2d 708 (Tex.Crim.App.1982) (op. on reh'g). The earliest of these cases was *Benson,* in which the defendant attacked the sufficiency of the evidence to sustain his conviction for retaliation. The statute under which the defendant was charged created an offense for threatening a "witness," but not for threatening a "prospective witness." The court concluded that under the charge, the only authorized verdict was not guilty because the evidence proved that the person threatened was only a prospective witness. However, the court also stated: "[W]hen a charge is correct for the theory of the case presented we review the sufficiency of the evidence in a light most favorable to the verdict by comparing the evidence to the indictment as incorporated into the charge." *Benson v. State,* 661 S.W.2d at 715 (emphasis omitted). *Benson* became the foundation for subsequent decisions.

A similar problem was presented in *Ortega.* In that case, the charge tracked the conjunctive language of the indictment, requiring proof that the defendant "intentionally and knowingly with intent to fraudulently obtain property *and* service" presented a credit card in exchange for clothing knowing that the card had not been issued to him. The only labor or service involved was the sales clerk's effort in completing the sale. Because there was no evidence that defendant did the act with intent to obtain both property *and* services, the proof was insufficient. *Ortega v. State,* 668 S.W.2d at 707. The court held

that the State did not prove the specific allegations in the indictment, as incorporated into the charge, and the defendant's conviction was reversed and a judgment of acquittal was ordered. *Id.* In response to the argument that the word "service" was mere surplusage, the court held that surplusage does not exist in a court's charge. *See Ortega v. State,* 668 S.W.2d at 707 n. 5.

Thereafter, in *Boozer,* the Court of Criminal Appeals considered a charge which instructed the jury that a witness was an accomplice as a matter of law; however, the evidence showed the charge was erroneous. The majority wrote: "[T]he sufficiency of the evidence is measured by the charge that was given." *Boozer v. State,* 717 S.W.2d at 610. Because there was insufficient evidence, as opposed to "trial error," the State was denied a retrial.

■ It is clear from these cases that when determining sufficiency, the evidence must be compared *to the entire charge. Garrett v. State,* 749 S.W.2d 784, 802–03 (Tex.Crim.App.1986) (op. on reh'g). *Benson, Ortega,* and *Boozer* involved factual situations in which the State was unable to meet its burden of proof under the entire charge. In each of these cases, it was impossible for the State to prove what it pled.[1] In each case, the factual deficiency was unchangeable and the evidence remained forever insufficient.

■ In the case at bar, we are bound to compare the evidence to the entire charge. We hold that the evidence, when compared to the application paragraph and the abstract instruction on the law of parties, was sufficient to prove the offense of aggravated robbery. Accordingly, we further hold that the charging error resulted in "trial error," and not "insufficiency of the evidence."

We next address *Garrett v. State* which appellant argues is dispositive of this case.

Garrett was charged with having "knowingly cause[d] the death of an individual, [the complainant], by shooting her with a gun." The facts showed that complainant, her family, and a neighbor were having a barbecue at their home. Garrett arrived with a rifle in her car and joined the group. The complainant went inside her mobile home to clean the dishes. An argument erupted between Garrett and the neighbor regarding Garrett's dog having been shot by the neighbor. Garrett went to her car, removed the rifle, and fired a shot at the neighbor. The bullet killed the complainant who was still inside the mobile home. There was no evidence that the defendant intentionally or knowingly shot the deceased. In the charge, the trial court provided the jury with an abstract instruction on the law of transferred intent, but failed to apply it to the facts.

The Court of Criminal Appeals held that the abstract charge on the law of transferred intent was not sufficient to bring that theory of law before the jury. *Garrett v. State,* 749 S.W.2d at 802. Although the court in *Garrett* correctly stated that the evidence must be compared to the entire charge, it seemingly did not do so. Rather, it apparently measured the evidence against only the application paragraph.[2] Facially, *Garrett* appears to provide direction in determining whether an improper jury instruction resulted in trial error or insufficiency of the evidence. Justice Campbell, writing for the court, acknowledges that despite the holding in *Garrett,* the cases of *Boozer, Ortega,* and *Benson* require that the sufficiency of the evidence must be measured against the "entire charge." *Garrett v. State,* 749 S.W.2d at 803. On rehearing, Justice Campbell expresses concern as to *Garrett's* effect on subsequent cases. He then cautions that *Garrett* is the product of an "unusual set

---

1. We note that in *Benson, Ortega,* and *Boozer,* there was no abstract instruction on the law on which the State could rely.

2. Even if the *Garrett* court did look to the entire charge in arriving at its decision, it apparently found that the law of transferred intent, charged only in the abstract, could not be relied upon as the theory of the case. Presumably this was because there is no vehicle in the law that permits the law of transferred intent to be applied to the facts of the case. However, the law of parties does provide such a vehicle. *See* TEX.PENAL CODE ANN. § 7.01(c) (Vernon 1974).

of circumstances" and indicates that it should be limited in its scope. *See Garrett v. State,* 749 S.W.2d 802–03. Consequently, we conclude that the holding in *Garrett,* by its own terms, appears to be limited to cases involving transferred intent where the issue concerns insufficiency of the evidence.[3]

Our conclusion is further strengthened by the codification of the law of parties. The Texas Penal Code provides that: "All traditional distinctions between accomplices and principals are abolished by this section, and each party to an offense may be charged and *convicted* without alleging that he acted as a principal or accomplice." TEX. PENAL CODE ANN. § 7.01(c) (Vernon 1974) (emphasis added). Thus, the law authorizes conviction without alleging participation as a principal or accomplice.[4] The indictment provides the defendant with notice of the offense, however, it is the charge that convicts. *See Benson v. State,* 661 S.W.2d at 715. In light of the foregoing, we conclude that under this record the abstract charge on the law of parties, considered in conjunction with the application paragraph, was sufficient to place that theory before the jury.

In summary, we hold that when viewed in light of the entire charge, the evidence is sufficient to support the verdict. Consequently, we conclude that the defective charge resulted in trial error, as distinguished from insufficiency of the evidence.

## II.

 The failure of the trial court to apply the law of parties to the facts resulted in a charge that was not correct for the theory of the case presented. *See Fain v. State,* 725 S.W.2d 200, 202 (Tex.Crim.App. 1986). However, because appellant failed to object to the charge, a reversal will result only if the error was egregious and created such harm that appellant was denied a fair and impartial trial. *Almanza v.*

*State,* 686 S.W.2d 157, 171 (Tex.Crim.App. 1984) (op. on reh'g); TEX.CODE CRIM. PROC.ANN. art. 36.19 (Vernon 1981). Per se reversible error in a jury charge no longer exists; instead, appellate courts must apply a case-by-case harm analysis. *Lawrence v. State,* 700 S.W.2d 208, 212 (Tex.Crim.App.1985).

In *Almanza v. State,* Judge Clinton's sagacious words with regard to the Court of Criminal Appeals' prior policy of discerning "fundamental" error and reversing without regard to harm is instructive:

Those kinds of judicial pronouncements engender disrespect for the courts and the law. As a court of last resort we should not be so far removed from reality that we cannot see when common sense coincides with the fair administration of justice. When we do see such coincidence our duty seems clear.

As a statement on how to determine the severity of any egregious error in the charge we cannot improve on the following from the court of appeals in 1890:

"But in determining whether the error is material ... we are to look to the whole record bearing upon the subject. What was the nature of the testimony supporting the verdict? Was it cogent and overwhelming? What was the character of the testimony presenting the phase or theory of the case omitted to be noticed in the charge, and upon which omission error is assigned? Was it at all reasonable? Did it present a theory which a reasonable mind could entertain, or was it supported by such testimony as was remotely calculated to destroy the State's case when considered in connection with the other testimony in the case, as well as the charge as a whole? Was the phase of the case simply an addition to the case as made by the State and consistent therewith, or was

---

3. The court distinguished, but did not overrule, its prior holding in *Romo v. State,* 568 S.W.2d 298 (Tex.Crim.App.1978) where in the absence of an objection, the omission of the law of parties from the application paragraph is not reversible error even though the law of parties had been given only in the abstract. We note

that in the case now before us, the appellant also failed to make an objection.

4. The Penal Code includes no similar language regarding charging or convicting an individual under the law of transferred intent.

it in direct conflict with the State's theory? These are all important matters to be considered in passing upon the [degree of harm] in the omission or error...."

686 S.W.2d at 173–74 (citation omitted).

██ When considering whether charging error on the law of parties was egregious, we are not limited to determining whether the evidence was sufficient to find guilt as a principal rather than as a party; we must consider the entire record of the proceedings below. *See Black v. State*, 739 S.W.2d 638, 640–41 (Tex.App.—Dallas 1987, no pet.) (on remand).

The case was presented to the jury under the theory that appellant was guilty as a "party," not as a principal. Although voir dire was not recorded, the prosecutor, without objection, recalled that the law of parties was explained during voir dire: "I want to talk to you just for a brief moment about the law of parties. We talked about that on voir dire...."

The evidence in the present case showed that appellant and his two co-defendants simultaneously entered the convenience store. While Clarence Rhynes was pointing a gun at the store clerk and taking money from the cash register tray, appellant said, "Why take all the bills?" Appellant then went around the counter and removed the coins from the cash register tray. Appellant's fingerprints were found on the bottom of the tray. Upon fleeing the store, he took a display case filled with watches.

The court's charge instructed the jury on the law of parties. The court also included the following instruction: "[Y]ou shall receive [the law] in these written instructions and you must be governed thereby." In so doing, the Court required the jury to consider the entire charge during its deliberations.

Both the State and appellant based their jury arguments solely on the theory of "parties." The State's closing argument, which was made without objection, reads in pertinent part as follows:

[The] charge sets forth the elements of the offense that on or about a certain date that defendant committed an aggravated robbery by using or exhibiting a deadly weapon. You must consider that instruction in connection with the law of parties. Now, the law of parties is set forth for you on page six of the charge.

\* \* \* \* \* \*

He's a party to an aggravated robbery. Defense counsel argued the same theory.

In order to determine whether he's guilty of aggravated robbery, you must determine if he, Kevin Jones, solicited, encouraged, directed or aided or attempted to aid Clarence, the person with the gun, who put Sandra in fear.

\* \* \* \* \* \*

Now, if you find that Kevin aided or encouraged or solicited that act, then you find he's guilty of robbery. If you find that he aided, advised or encouraged or solicited the use of the deadly weapon, then he's guilty of aggravated robbery. It's that clear. It's right here in the Court's charge....

Error in a court's charge begins, but does not end, the inquiry into the harm analysis. We must then view the record as a whole to determine the "actual, not just theoretical, harm to the accused." *Almanza v. State*, 686 S.W.2d at 174. There is no apparent reason to apply a different "standard in assessing harm from a charging error on the law of parties than applies to charging errors generally. Relevant in assessing the harm of a charging error is not only the evidence but the emphasis and interpretation of the evidence under the charge in closing argument, as well as the entire record." *Black v. State*, 739 S.W.2d at 641. *See also Lawrence v. State*, 700 S.W.2d at 212–13.

██ We have reviewed the entire record in this case. The inquiry reveals that the law of parties was discussed with the jury at voir dire. Our evidentiary review shows appellant's criminal responsibility, solely as a party, was clearly proven beyond a reasonable doubt. The abstract law of parties was in the charge, and the jury was instructed to be governed by all of the writ-

ten instructions contained in the charge. In their arguments, both appellant and the State relied on the law of parties as the theory of the case. Thus, this theory was before the jury. Our inquiry ends with the conclusion that the jury understood and applied the law of parties to the facts. It is apparent from the record that appellant was afforded a fair and impartial trial and did not suffer egregious harm due to the court's failure to apply the law to the facts. Appellant's first and second points of error are overruled.

### III.

In his third point of error, appellant contends that his conviction should be reversed due to the prosecutor's jury argument. Jury argument has four permissible purposes: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) an answer to opposing counsel; and (4) a plea for law enforcement. *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex.Crim.App. 1973).

■■■ The argument complained of was as follows:

[The State] The bottom line of their testimony. Each testified in direct contradiction to statements they gave. Even Clarence Rhynes got up there and impeached the testimony of the other co-defendant. They can't even keep their stories straight after they have had an opportunity to discuss it and review it sitting back there in the holdover cell together.

[Defense] Objection, Your Honor.

[The State] They just can't keep their stories straight.

[Defense] Objection. There's no testimony, hasn't been any testimony that they're in the cell together. I haven't seen them, and I don't think Ms. Goodman has seen them.

[The Court] I'm going to sustain that. I don't think there is any testimony about that.

Generally, improper jury argument will result in reversal only if a specific objection was made and an adverse ruling was obtained. *See Powell v. State*, 475 S.W.2d

934, 935 (Tex.Crim.App.1972). If an objection is sustained, an instruction to disregard must be requested. *Id.* Appellant requested an instruction to disregard, not a mistrial. Consequently, he received all of the relief he sought.

■■■ The Court of Criminal Appeals has reviewed extreme cases where a corrective instruction would not suffice, regardless of whether the error was preserved. *Bray v. State*, 478 S.W.2d 89, 90 (Tex.Crim.App. 1972). In order for the prosecutor's argument to mandate reversal as "incurable," it must be clearly calculated to inflame the minds of the jury and be of such a character as to suggest the impossibility of withdrawing the impression made by the argument. *Campos v. State*, 589 S.W.2d 424, 428 (Tex.Crim.App.1979). The trial court's comment that there was no evidence to substantiate the State's argument was sufficient to remove any harm injected. The State's argument does not amount to incurable error requiring reversal. Appellant's final point of error is overruled.

The judgment is affirmed.

ENOCH, C.J., and HOWELL, STEWART, ROWE, LAGARDE, KINKEADE, BURNETT and WHITTINGTON, JJ., agree with the majority opinion.

BAKER, J., dissents with an opinion.

WHITHAM, McCLUNG and THOMAS, JJ., agree with BAKER'S, J., dissent.

BAKER, Justice, dissenting.

I respectfully dissent.

The majority, in my view, has failed in its attempt to distinguish *Garrett v. State*, 749 S.W.2d 784 (Tex.Crim.App.1988) (plurality op. on reh'g) (*Garrett III*). Simply stated, the majority misreads *Garrett* in its strained attempt to distinguish it in order to reach the result the majority desires.

In partial justification of its refusal to follow *Garrett*, the majority states that the Court of Criminal Appeals did not compare the evidence to the entire jury charge in

*Garrett,* but only to the application paragraph. Yet, that court stated, referring to *Garrett III* (*Garrett v. State,* 749 S.W.2d 784 (Tex.Crim.App.1986)):

> At first blush, this case seems to require that a measurement of the sufficiency of the evidence be limited to a sole consideration of the application paragraph of the jury charge. This would be misapplication of the rule enunciated in *Boozer v. State ...; Ortega v. State ...;* and *Benson v. State....* *Boozer, Ortega,* and *Benson* hold that sufficiency of the evidence be measured against the jury charge, *which we interpret to mean the entire charge.*

*Garrett III,* 749 S.W.2d at 802–03 (citations and footnote omitted) (emphasis added). Moreover, in *Garrett II,* the court stated:

> We are not persuaded that because the court's charge abstractly defined transferred intent in a paragraph (designated "3–A") appearing immediately after the paragraph applying the law of murder to the facts of the case (designated "3") the jury was therefore authorized to convict appellant on that theory. In no way can the application paragraph (which begins, incidentally: "Now bearing in mind the *foregoing* instructions ...") be construed to refer to the abstract definition, so even "reading the charge as a whole," ... would not inform the jury that it could convict appellant on that theory. Mere juxtaposition does not amount to authorization.

*Garrett II,* 749 S.W.2d at 789 n. 6 (citations omitted). In view of these clear statements by the Court of Criminal Appeals, I cannot agree with the majority's conclusion that the court did not compare the evidence to the entire charge in *Garrett.* It therefore follows that its alleged failure to do so cannot justify the majority's refusal to apply *Garrett* to the instant case.

The majority also indicates that *Garrett* is not applicable even if the *Garrett* court did look to the entire jury charge in reaching its decision. The majority concludes that *Garrett* does not apply here because the majority states that there is no vehicle for applying the law of transferred intent

to the facts, whereas the law of parties does provide such a vehicle. This conclusion is patently baseless because the law does indeed provide a vehicle for applying the law of transferred intent to the facts of a case. *See* TEX.PENAL CODE ANN. § 6.04(b)(2) (Vernon 1974); Searcy & Patterson, *Practice Commentary,* TEX.PENAL CODE ANN. § 6.04 (Vernon 1974). Again, the majority has failed in its attempt at distinguishing *Garrett.*

The majority also suggests that Judge Campbell, in *Garrett III,* expressed concern about *Garrett's* effect on later cases. The majority states that Judge Campbell cautioned that *Garrett* is the product of unusual circumstances and indicated that it should be limited in its scope. The majority then concludes that the holding in *Garrett* appears to be limited to cases involving transferred intent where the issue concerns sufficiency of the evidence.

This conclusion serves only as the means to the majority's end and is without support when the statements are considered in context. Quoted in full, Judge Campbell said:

> A different concern raised by *Garrett II,* although it is not mentioned in the State's motion for rehearing, is its possible effect on subsequent cases. A close inspection of *Garrett II* reveals that it is the product of an unusual set of circumstances, illustrating the tension between pre- and post-*Almanza* analysis, which have created a result that appears to be something it is not. At first blush, this case seems to require that a measurement of the sufficiency of the evidence be limited to a sole consideration of the application paragraph of the jury charge. This would be misapplication of the rule enunciated in *Boozer ...; Ortega ...;* and *Benson....* *Boozer, Ortega,* and *Benson* hold that sufficiency of the evidence be measured against the jury charge, which we interpret to mean the entire charge.

*Garrett III,* 749 S.W.2d at 802–03 (citations and footnotes omitted).

First, it should be noted that Judge Campbell's remarks were directed at *Gar-*

rett II, not Garrett III. Secondly, his statements do not clearly indicate that Garrett III should be limited in its scope. Thirdly, by adhering to the rule that evidence sufficiency is measured against the entire jury charge, and thereby eliminating any potential misreading of Garrett III, Judge Campbell has eliminated the problem that he identifies as Garrett II's possible effect on subsequent cases.

In other words, Judge Campbell identified a potential problem with Garrett II that resulted from the fact that it was "the product of an unusual set of circumstances." He then resolved the problem, thus eliminating any need to artificially limit the scope of Garrett III. Therefore, the majority's other justification for not following Garrett III is inadequate.

In his first point of error, the appellant has asserted that the evidence, when viewed in light of the charge that was given to the jury, was insufficient to sustain his conviction for aggravated robbery. As the majority acknowledges, the jury charge erroneously failed to apply the law of parties to the facts of the case. Although the charge contained an abstract instruction on the law of parties, it is clear that the application portion of the jury charge authorized conviction only upon a finding that appellant "knowingly or intentionally threaten[ed] or place[d] SANDRA TUBBS in fear of imminent bodily injury or death" or that he "use[d] or exhibit[ed] a deadly weapon, to-wit: a firearm." Six paragraphs and two pages later, the jury charge contained the abstract instruction on the law of parties.

Since a verdict of "guilty" necessarily means that the jury found evidence of that on which it was authorized to convict, sufficiency of the evidence is measured by the charge that was given to the jury. Boozer, 717 S.W.2d at 608, 610 (Tex.Crim.App. 1984). In Garrett II and III, the Court of Criminal Appeals rejected the argument that an abstract charge on the law of transferred intent was sufficient to place that theory before the jury, even though the abstract instruction immediately followed the application portion of the charge. 749

S.W.2d at 788, 802. In Garrett II, the court affirmed the Court of Appeals' holding that the evidence, viewed in light of the jury charge, was insufficient to support the verdict that Garrett "knowingly" caused the victim's death. 749 S.W.2d at 788–89, 790. In Garrett III, the court denied the State's motion for rehearing even though it stated that sufficiency of the evidence must be measured against the entire jury charge. 749 S.W.2d at 803, 804.

In my view, Garrett III controls this case. There is no meaningful or principled distinction between that case and the instant case. Both the law of parties and the law of transferred intent serve to expand criminal liability. See TEX.PENAL CODE ANN. §§ 6.04, 7.01, 7.02 (Vernon 1974). In both Garrett and this case, the jury charges failed to apply the respective theories of expanded criminal liability to the facts. In Garrett III, the Court of Criminal Appeals held that such failure meant that the theory of transferred intent was not adequately before the jury. 749 S.W.2d at 802. I see no good reason, and in my opinion the majority has not supplied one, for reaching a different result in this case regarding the law of parties.

Based on the foregoing analysis of Garrett, I would hold that the jury charge in the present case did not adequately submit the theory of appellant's liability as a party to the offense of aggravated robbery. Therefore, the sufficiency of the evidence must be measured in light of the only theory available, namely appellant's liability as a primary actor. If the evidence does not conform to the charge as given, it is insufficient as a matter of law to support the only verdict of "guilty" which was authorized. Boozer, 717 S.W.2d at 610–11.

In examining the evidence, it must be viewed in the light most favorable to the prosecution to determine if any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Dickey v. State, 693 S.W.2d 386, 387 (Tex.Crim.App.1984). In this case, the essential elements of the crime, in light of the charge that was given to the jury, included "knowingly or intentionally threat-

en[ing] or plac[ing] SANDRA TUBBS in fear of imminent bodily injury or death" or "us[ing] or exhibit[ing] a deadly weapon, to-wit: a firearm." Viewed in the light most favorable to the prosecution, the evidence simply does not show that appellant did that. Therefore, the evidence is insufficient to support appellant's conviction of aggravated robbery as a primary actor. Under the trial court's charge, the only verdict authorized in view of the evidence was "not guilty." *See Boozer*, 717 S.W.2d at 611.

I would sustain appellant's first point of error, reverse the judgment of the trial court, and render a judgment of acquittal. *See Burks v. United States*, 437 U.S. 1, 10–11, 98 S.Ct. 2141, 2146–2147, 57 L.Ed.2d 1 (1978). However undesirable the result, this Court must follow the law. One may argue that *Garrett* is bad law, but it is nevertheless the law, and it is binding on this Court. Some commentators have suggested ways to avoid the arguably undesirable result of acquittal in cases like this one. *See, e.g.*, Seymore & Thielman, *Appellate Reversal for Insufficient Evidence in Criminal Cases: The Interaction of the Proof and the Jury Charge*, 16 AM.J. CRIM.L. _____ (1989). However, I view *Garrett III* as dispositive of this case until it is either changed or adequately distinguished.[1]

---

**1.** In two prior unpublished opinions, this Court rendered judgments of acquittal in substantially similar cases. Both cases involved jury charges that contained only abstract instructions on the law of parties. The evidence in both cases did not support findings that the defendants were guilty as primary actors. Both convictions were reversed based on the authority of *Garrett II*. *See Staten v. State*, No. 05–86–00903–CR (Tex. App.—Dallas Aug. 17, 1987, pet. ref'd); *Reeves v. State*, No. 05–86–00770–CR (Tex.App.—Dallas June 8, 1987, pet. ref'd). I do not cite these cases as authority. *See* TEX.R.APP.P. 90(i). I do, however, note that by refusing the petitions for discretionary review, the Court of Criminal Appeals has declined on two occasions to tell this Court that *Garrett II* was wrongly applied in the two cases to which reference is made.