AFFIRM; Opinions issued January 11, 2013.



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-11-01299-CR

**EDDRIC M. WILLIAMS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 291st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F10-59036-U**

# OPINION

Before Justices FitzGerald, Fillmore, and Richter[1]
Opinion By Justice Fillmore

A jury convicted Eddric M. Williams of murder and sentenced him to seventy-five years' imprisonment. In two issues, Williams asserts the trial court erred by including an instruction in the punishment phase jury charge that impermissibly prohibited the jury from considering voluntary intoxication in mitigation unless it rose to the level of temporary insanity, and trial counsel was ineffective by requesting the instruction. We affirm the trial court's judgment.

---

[1] The Honorable Martin E. Richter, Retired Justice, Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment.

## Background[2]

On August 5, 2010, Darron Scourton was shot eleven times in the parking lot of the Leigh Ann Apartments. Scourton died from his injuries.

Terrence Clayton, Scourton's cousin, testified he, his eight-year-old son, and Scourton were standing on a corner in the parking lot when he saw Williams walking toward them. Williams was saying loudly that he was the wrath of God and was there to kill all demons and serpents. Williams stopped in front of Clayton and said, "And I will kill you." Williams had a gun in his hand.

Scourton pushed Clayton to one side and attempted to talk to Williams. Clayton grabbed his son and ran to his car. As he was crouched behind his car, Clayton saw Williams fire the gun at Scourton's head. Scourton fell to the ground. Williams then repeatedly fired the gun at Scourton.

Regina Scourton, Scourton's wife, was inside her apartment when she heard a gunshot. Regina went outside to investigate and saw Williams standing by her husband's body with a gun in his hand. Williams then shot at the body three more times.

According to Billy King, Sr., a resident of the Leigh Ann Apartments, Williams was generally "laid back," but could be a "hot head" if you owed him, "messed with him," or disrespected him or the mother of his child. On August 5, 2010, King saw Williams in an "altercation" with Scourton. King heard Williams say he had a message from God and "then all of a sudden comes out with a – with a .45, boom." Williams shot Scourton a number of times. King tried to tell Williams to stop shooting Scourton. King's wife stopped him and said "he's crazy. He's out of his mind. He's liable to shoot you. He's out of his mind. He don't know what's going on." After Williams shot Scourton, King heard Williams say to Scourton that he had told Scourton that

---

[2] Williams has not challenged the sufficiency of the evidence to support the conviction. Therefore, we recite only those facts necessary to address his complaints on appeal.

-2-

he was going to kill "one of you" for bothering him.

Williams testified he took PCP[3] on August 5, 2010. He was talking to a couple of women about God and remembers saying he was the wrath of God. Williams then looked toward the moon and everything went white. Williams does not recall shooting Scourton.

After the jury found Williams guilty of murdering Scourton, it heard testimony from Arturo Mestas that Williams was a bully and liked to start trouble. One time, Williams and Mestas got into a fight. Williams picked Mestas up and dropped him on his head, giving him a concussion.

Kimberly Morgan testified she grew up with Williams, and he was loving and caring. Williams was not a bully, and his behavior on August 5, 2010 was out of character. According to Morgan, if Williams had not taken PCP, he would not have acted that way. Misty Williams, Williams's sister, testified Williams must have been in an altered state and there was "no way" he could "have been in his right mind." Williams testified that he had taken PCP on prior occasions and had never been violent. His actions on August 5, 2010 were "not [him] at all," and the murder would not have happened if he had not taken PCP.

In the punishment charge, the trial court instructed the jury:

> [U]nder our law neither intoxication nor temporary insanity of mind caused by intoxication shall constitute any defense to the commission of a crime. Evidence of temporary insanity caused by intoxication may be considered in mitigation of the penalty, if any, attached to the offense.
> By the term "intoxication" as used herein is meant disturbance of mental or physical capacity resulting from the introduction of any substance into the body.
> By the term "insanity" as used herein is meant that as a result of intoxication the defendant did not know that his conduct was wrong.
> Now, if you find from the evidence that the defendant, Eddric Williams, at the time of the commission of the offense for which he is on trial, if you find from the evidence beyond a reasonable doubt that the [sic] did commit such offense, was laboring under temporary insanity as defined in this charge, produced by voluntary

---

[3] "PCP" is phencyclidine, a controlled substance. *Black v. State*, 739 S.W.2d 638, 641 n.5 (Tex. App.—Dallas 1987, no pet.).

−3−

intoxication, then you may take such temporary insanity into consideration in mitigation of the penalty which you attach to the if crime, if you find him guilty.

After the jury began deliberating punishment, the following exchange occurred:

| | |
|---|---|
| Triat Court: | The Court has submitted the charge to both the State and the Defense. The Defense had made a special request regarding the voluntary intoxication. |
| [Prosecutor]: | Yes, Your Honor. |
| Trial Court: | The Court has included that. Was there any objection from the State or the Defense? No objection from the State? |
| [Prosecutor]: | No. |
| Trial Court: | Defense? |
| [Defense Counsel]: | No, Your Honor. |
| Trial Court: | Okay. I just want the record to be clear. |

The jury assessed punishment of seventy-five years' imprisonment.

## Charge Error

Relying on dicta from *Tucker v. State*, 771 S.W.2d 523 (Tex. Crim. App. 1988), Williams contends in his first issue that the instruction on voluntary intoxication included in the punishment phase charge impermissibly prohibited the jury from considering voluntary intoxication in mitigation of punishment unless it rose to the level of "temporary insanity." However, the record reflects Williams requested the trial court to include the instruction on voluntary intoxication in the jury charge and the trial court granted his request.

The court of criminal appeals has consistently held that if a defendant requests a charge and the charge is submitted as requested, the defendant is in no position to complain of that charge on appeal. *Trejo v. State*, 280 S.W.3d 258, 260 (Tex. Crim. App. 2009); *Prystash v. State*, 3 S.W.3d 522, 531 (Tex. Crim. App. 1999); *Livingston v. State*, 739 S.W.2d 311, 341 (Tex. Crim. App. 1987).

-4-

Even if the charge is later found to be erroneous, the accused may not first invite error and then complain about it on appeal. *Prystash*, 3 S.W.3d at 531; *Tucker*, 771 S.W.2d at 534. The court of criminal appeals has specifically concluded a defendant may not request an instruction on voluntary intoxication as mitigation of punishment and then complain about the instruction on appeal. *Tucker*, 771 S.W.2d at 534.

Because the trial court charged the jury in the manner requested by Williams, any error in giving the instruction is invited. We resolve Williams's first issue against him.

## Ineffective Assistance of Counsel

In his second issue, Williams asserts his counsel was ineffective by requesting the instruction on voluntary intoxication in the punishment phase of the trial. Williams specifically argues there was no reasonable trial strategy for requesting an instruction that precluded the jury from giving consideration to any intoxication that did not rise to the level of temporary insanity.

To be entitled to a new punishment hearing based on an ineffective assistance of counsel claim, a defendant must show that counsel's performance was deficient and the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687–88, 692 (1984); *Riley v. State*, 378 S.W.3d 453, 456 n.5 (Tex. Crim. App. 2012); *Ex parte Lane*, 303 S.W.3d 702, 707 (Tex. Crim. App. 2009). The first prong requires the defendant to show counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 687–88, 689; *Ex parte Lane*, 303 S.W.3d at 707. The second prong requires the defendant to show there is a reasonable probability that, but for his counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694; *Ex parte Lane*, 303 S.W.3d at 707. A defendant's failure to satisfy one prong negates the need to consider the other prong. *Strickland*, 466 U.S. at 697; *Ex parte Lane*, 303 S.W.3d at 707.

In determining whether a defendant has met his burden, we consider the totality of the representation and the particular circumstances of each case. *Ex parte Lane*, 303 S.W.3d at 707. We strongly presume counsel's conduct fell within the wide range of reasonable professional assistance and do not judge counsel's actions in hindsight. *Strickland*, 466 U.S. at 689; *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). The fact that another attorney might have pursued a different strategy at trial is not sufficient to prove counsel was ineffective. *Scheanette v. State*, 144 S.W.3d 503, 509 (Tex. Crim. App. 2004).

Our review of counsel's performance is highly deferential and begins with the assumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005). We commonly assume a strategic motive if any can be imagined and conclude counsel's performance was deficient only if the conduct was so outrageous that no competent attorney would have engaged in it. *Id.* An ineffective assistance claim must be "firmly founded in the record," and the record must affirmatively demonstrate that the claim has merit. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *see also Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App.), *cert. denied*, 131 S.Ct. 3073 (2011) ("Allegations of ineffectiveness must be based on the record, and the presumption of a sound trial strategy cannot be overcome absent evidence in the record of the attorney's reasons for his conduct."). In most cases, a silent record that provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. *Cannon v. State*, 252 S.W.3d 342, 349 (Tex. Crim. App. 2008); *Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003). Further, counsel should ordinarily be accorded an opportunity to explain his actions before being condemned as unprofessional and incompetent. *Rylander*, 101 S.W.3d at 111; *Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002). Because the reasonableness of counsel's choices often involve facts that

-6-

do not appear in the appellate record, an application for writ of habeas corpus is generally the more appropriate vehicle to raise ineffective assistance of counsel claims. *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002).

Williams contended at trial that, due to his use of PCP, he did not remember shooting Scourton. He presented evidence that his shooting Scourton was out of character and only occurred because he had taken PCP. Evidence that the defendant may have been intoxicated at the time of the offense does not automatically entitle him to a mitigation instruction at punishment. *Miniel v. State*, 831 S.W.2d 310, 320 (Tex. Crim. App. 1992); *Shelton v. State*, 41 S.W.3d 208, 213 (Tex. App.—Austin 2001, pet. ref'd). However, "[e]vidence of voluntary intoxication may serve to mitigate the severity of an offense where the effect of the intoxication is to render the defendant temporarily insane." *Ex parte Martinez*, 195 S.W.3d 713, 722 (Tex. Crim. App. 2006) (citing section 8.04(b) of the penal code). On this record, Williams has failed to establish a determination by his trial counsel that it would benefit Williams to have an instruction in the jury charge that voluntary intoxication rising to the level of temporary insanity could act to mitigate the severity of punishment was not a reasonable trial strategy.

In most cases, a silent record will not overcome the strong presumption of counsel's reasonable assistance. *See Rylander*, 101 S.W.3d at 110–11. Although Williams filed a motion for new trial, he did not raise the issue of ineffective assistance of counsel in the motion and did not have a hearing on the motion. Consequently, Williams's trial counsel has not been given an opportunity to explain his actions in requesting the complained-about instruction. Nor has Williams shown that this case is one of those extraordinary situations in which the face of the record shows counsel's challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) (citing *Thompson*, 9 S.W.3d at

–7–

814). We conclude Williams has not met his burden of showing that trial counsel's performance fell below an objective standard of reasonableness. *See Freeman v. State*, 125 S.W.3d 505, 506–07 (Tex. Crim. App. 2003) ("The record in this case is insufficient to support the conclusion [that appellant received ineffective assistance of counsel] because appellant did not develop a record in the trial court for the purpose of establishing this claim.").

We resolve Williams's second issue against him and affirm the trial court's judgment.


ROBERT M. FILLMORE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

111299F.U05



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

EDDRIC M. WILLIAMS, Appellant

No. 05-11-01299-CR      V.

THE STATE OF TEXAS, Appellee

Appeal from the 291st Judicial District
Court of Dallas County, Texas. (Tr.Ct.No.
F10-59036-U).
Opinion delivered by Justice Fillmore,
Justices FitzGerald and Richter
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered January 11, 2013.

ROBERT M. FILLMORE
JUSTICE