**Kevin Menard JONES, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 937–89.

Court of Criminal Appeals of Texas, En Banc.

June 26, 1991.

Rehearing Denied Sept. 18, 1991.

John D. Nation, Dallas, for appellant.

John Vance, Dist. Atty., Teresa Tolle, Asst. Dist. Atty., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

### PER CURIAM.

Appellant was convicted of aggravated robbery Tex.Penal Code Ann. § 29.03. A divided Court of Appeals affirmed appellant's conviction. *Jones v. State,* 774 S.W.2d 7 (Tex.App.—Dallas 1989). We granted appellant's petition for discretionary review to examine whether the Court of Appeals erred in concluding the evidence was sufficient to support appellant's conviction. We will reverse.

The record reflects that Sandra Tubbs was working as a cashier at the Gulf Majek Market in Lancaster. Around 8:30 a.m. on November 9, 1985, three males, later identified as appellant, Clarence Rhynes and Stanley Coleman, entered the store. Coleman went to the counter, Rhynes went to the ice cream machine and appellant stood near the only door. Coleman asked Tubbs for a package of cigarettes. Tubbs complied and rang up the sale. Coleman paid part of the amount owed and asked Rhynes for the balance. Rhynes gave Coleman the money and then went behind the counter. Rhynes pointed a gun at Tubb's face and demanded that she give him all of the money. Coleman and appellant remained in their original locations within the store. Appellant remained the lookout, but moved closer to the counter when Coleman began grabbing the money in the register. Afterwards, Coleman and appellant went behind the counter. Appellant removed all the coins from the cash tray, and Coleman took several cartons of cigarettes. As the three left the store appellant grabbed a display of watches, and fled. Appellant's fingerprint was positively identified on the underside of the cash register.

The jury convicted appellant of aggravated robbery. On direct appeal, he challenged the sufficiency of the evidence by asserting that the jury charge did not authorize the jury to convict him as a party to the aggravated robbery because the application paragraph authorized his conviction only as the primary actor. The Court of Appeals affirmed, holding "that when determining sufficiency, the evidence must be compared *to the entire charge." Jones,* 774 S.W.2d at 11–12 (emphasis in original), citing *Garrett v. State,* 749 S.W.2d 784, 802–03 (Tex.Cr.App.1983) (opinion on reh'g).

The Court's charge authorized punishment on the theory of aggravated robbery and robbery. After the application paragraphs, the charge subsequently tracked the statutory language regarding conviction as a party. Tex.Penal Code Ann. §§ 7.01(a) and 7.02(a)(2). The charge failed to apply the abstract theory of parties to the facts of the case.[1]

In *Garrett v. State,* 749 S.W.2d at 802–03 (Tex.Cr.App.1986) (opinion on reh'g), we reiterated that the sufficiency of the evidence must be measured against the jury charge, which we interpreted to mean as "the entire charge." See *Boozer v. State,* 717 S.W.2d 608 (Tex.Cr.App.1986); *Ortega v. State,* 668 S.W.2d 701 (Tex.Cr.App.1983); *Benson v. State,* 661 S.W.2d 708 (Tex.Cr. App.1983). However, *Garrett,* 749 S.W.2d at 802–03, also held that the mere inclusion of an abstract definition of the theory of transferred intent was not sufficient to bring that theory before the jury.

In *Garrett,* the defendant was charged with "knowingly" causing the deceased's death. The evidence showed that the deceased, her family and a neighbor were eating barbecue outside the deceased's home when Garrett arrived. Garrett and the neighbor began arguing over the neighbor shooting Garrett's dog. Garrett retrieved a shotgun from her car and fired a shot at the neighbor. The bullet missed the neighbor but killed the deceased who was inside her mobile home. Because there was no evidence that Garrett knowingly killed the deceased, the State proceeded on a theory of transferred intent. See Tex.Penal Code Ann. § 6.04(b)(2).[2] The

---

**1.** There was no objection to the charge by either the State or the defense.

**2.** Tex.Penal Code Ann. § 6.04(b)(2) provides that a "person is nevertheless criminally respon-

charge included an abstract instruction on the law of transferred intent, but failed to apply this law to the facts of the case in the application paragraph. On original submission, this Court held that the abstract instruction on the law of transferred intent was not sufficient to bring that theory before the jury. Specifically, we held:

> We are not persuaded that because the court's charge abstractly defined transferred intent in a paragraph (designated '3-A') appearing immediately after the paragraph applying the law of murder to the facts of the case (designated '3') the jury was therefore authorized to convict appellant upon that theory. In no way can the application paragraph (which begins, incidentally: 'Now bearing in mind the *foregoing* instruction ...') be construed to refer to the abstract definition, so even 'reading the charge as a whole,' see *Brown v. State*, 716 S.W.2d 939 (Tex. Cr.App.1986); *Doyle v. State*, 631 S.W.2d 732 (Tex.Cr.App.1982) (Opinion on rehearing), would not inform the jury that it could convict appellant on that theory. Mere juxtaposition does not amount to authorization.

*Garrett*, 749 S.W.2d at 789 n. 6 (opinion on original submission) (emphasis in original).[3]

*Garrett* is one in a long line of cases which stand for the proposition that the application paragraph of a jury charge is that which authorizes conviction, and an abstract charge on a theory of law which is not applied to the facts is insufficient to bring that theory before the jury. *McCuin*

*v. State*, 505 S.W.2d 827 (Tex.Cr.App.1974); *Oliver v. State*, 160 Tex.Crim. 222, 268 S.W.2d 467, 469 (1954) (Opinion on rehearing); *Barnes v. State*, 145 Tex.Crim. 163, 166 S.W.2d 708 (1942); *Crisp v. State*, 125 Tex.Crim. 603, 69 S.W.2d 772 (1934). See also, *Apodaca v. State*, 589 S.W.2d 696 (Tex.Cr.App.1979); and *Harris v. State*, 522 S.W.2d 199, 202 (Tex.Cr.App.1975) and cases cited therein.

This line of cases has been referred to as the *Oliver* line of cases. *McCuin*, 505 S.W.2d at 830. In *Oliver*, 268 S.W.2d at 469, the evidence demonstrated that Oliver, if guilty at all, was guilty only as a "principal" to a killing, and not as the one who actually fired the deadly shot.[4] Another had confessed to shooting the deceased. The court's charge contained an abstract definition on the law of principals, but failed to apply the law to the facts. This Court held:

> The jury was authorized by the charge to convict appellant upon a finding that he committed the murder, but the evidence is not such as would sustain such a finding.

> The jury was not instructed to the effect that if [another individual] voluntarily killed the deceased and appellant acted with him as a principal, in one or more of the ways stated in the definition of that term, he should be convicted.

> The trial court should have made application of the law of principals to the facts, the jury, under the facts here, not

sible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked is that ... a different person or property was injured, harmed or otherwise affected."

**3.** The opinion on rehearing agreed that the abstract instruction on the law transferred intent was not sufficient to bring that theory before the jury. *Garrett*, 749 S.W.2d at 802. The Court of Appeals distinguished *Garrett* by concluding that the law provides no vehicle "that permits the law of transferred intent to be applied to the facts of the case. However, the law of parties does provide such a vehicle. See Tex.Penal Code Ann. § 7.01(c)." *Jones*, 774 S.W.2d at 7 n. 2. Section 7.01(c) abolishes the distinction between accomplices and principals, and provides that "each party to an offense may be charged

and convicted without alleging that he acted as a principal or accomplice."

The Court of Appeals' reasoning is that the law of parties, in and of itself, authorizes the jury to find guilt on that theory. This reasoning is in direct conflict with the above-quoted portion of *Garrett* which states that mere juxtaposition of a theory of law in a charge "does not amount to authorization." *Garrett*, 749 S.W.2d at 789 n. 6 (citations omitted).

**4.** Under current law, the distinction between accomplices and principals has been abolished. Tex.Penal Code Ann. § 7.01(c) expressly states: "All traditional distinctions between accomplices and principals are abolished by this section, and each party to an offense may be charged and convicted without alleging that he acted as a principal or accomplice."

being warranted in convicting him unless they found that knowing [the other individual]'s unlawful intent, he agreed to or aided or encouraged him in the commission of the offense.

*Oliver,* 268 S.W.2d at 470.

In *McCuin,* 505 S.W.2d at 830, another case dealing with the law of principals, the Court explained the Oliver rule as follows:

if the evidence introduced upon the trial of the cause shows, or raises an issue, that the conduct of the defendant then upon trial is not sufficient, in and of itself, to sustain a conviction, the State's case rests upon the law of principals and is dependent, at least in part, upon the conduct of another. In such a case, the law of principals must be submitted and made applicable to the facts of the case. Thus, the Oliver rule will govern this fact structure.

In *Apodaca,* 589 S.W.2d 696, this Court applied the "Oliver" rule and reversed a conviction because the jury charge failed to apply the law of parties to the facts. Apodaca and his companion were pursuing the deceased in a high speed highway chase. Apodaca's companion was driving, and at times during the pursuit Apodaca leaned out of the car and beat on the deceased's truck with a tire tool. The car eventually hit the truck, knocking it into a guard rail. The deceased was killed in the crash.

The State's theory was that Apodaca's companion, as the driver of the car, was the primary actor and that appellant was guilty, if at all, as a party because he solicited, encouraged, directed, aided or attempted to aid the driver. The court abstractly charged the jury on the law of parties, but did not apply the law to the facts.[5] Apodaca contended on appeal that because the charge failed to apply the law to the facts, the charge was insufficient. This Court agreed. *Id.*[6]

■ What can be gleaned from *Garrett, Apodaca* and predecessor case law is that while we view sufficiency of the evidence against an "entire charge," *Garrett,* 749 S.W.2d at 802–803, a charge which fails to apply a theory of law to the facts of the case is insufficient to authorize conviction on that theory, even where the theory of law is abstractly defined in the charge. *Id.,* 749 S.W.2d at 789 n. 6. "Mere juxtaposition does not amount to authorization." *Ibid.*

■ This rationale is founded upon the notion that a charge which contains an abstract paragraph on a theory of law, but does not apply the law to the facts, deprives the defendant of "a fair and impartial trial." *Harris v. State,* 522 S.W.2d 199, 202 (Tex.Cr.App.1975), citing *Fennell v. State,* 424 S.W.2d 631 (Tex.Cr.App.1968). This type of error "in the charge goes to the very basis of the case so that the charge fails to state and apply the law under which the accused is prosecuted." *Harris,* 522 S.W.2d at 202, and cases cited therein.

■ Turning to the case at bar, the evidence establishes that Rhynes, not appellant, used or exhibited a deadly weapon during the robbery. We are required to measure the evidence against the jury charge. *Garrett,* 749 S.W.2d 784; *Ortega,* 668 S.W.2d 701; *Arceneaux v. State,* 803

5. The trial court charged the jury on the abstract law of parties; however, the charge made reference to "principals" instead of "parties." Although the miswording was the subject of one of Apodaca's points of error, the Court hinged its ruling on the fact that the charge's failure to apply the law to the facts made it insufficient to require the jury to find whether Apodaca was criminally responsible for the acts of his companion. *Apodaca,* 589 S.W.2d at 697 n. 1, and 698–99.

6. This Court has also applied the Oliver rule where the charge applied the law of principals to the facts, but also permitted the jury to find the defendant guilty on a theory unsupported by the evidence. In *Savant v. State,* 544 S.W.2d 408 (Tex.Cr.App.1977), there was no evidence that Savant was guilty of shooting the victim, although there was evidence that he attacked the victim shortly before another man shot the victim. The charge authorized punishment for Savant "either acting alone or together with some other person or persons as a principle." This Court held that the attempt to apply the law of principals to the facts was erroneous because it permitted the jury to find Savant guilty if he alone committed the offense, a theory unsupported by the evidence. *Id.,* 544 S.W.2d at 409.

S.W.2d 267 (Tex.Cr.App.1990). The only theory upon which appellant could be found guilty of *aggravated* robbery is under the theory of parties, but the charge does not authorize conviction on that theory. We conclude that the evidence is insufficient to demonstrate that appellant was guilty of aggravated robbery in a non-parties capacity. *Boozer,* 717 S.W.2d at 610. *Garrett,* 749 S.W.2d 784.

The judgment of the Court of Appeals is reversed, and the cause is remanded to the trial court for the entry of a judgment of acquittal.

MILLER, J., concurs with note: Since this case is factually indistinguishable from *Garrett v. State,* 749 S.W.2d 784 (Tex.Cr.App.1986), I concur.

BENAVIDES, J., concurs in the result.

McCORMICK, Presiding Judge, dissenting.

Appellant, Kevin Menard Jones, appealed his conviction for aggravated robbery to the Dallas Court of Appeals. That court affirmed the conviction. *Jones v. State,* 774 S.W.2d 7 (Tex.App.—Dallas 1989) (en banc).[1] Thereafter, appellant sought discretionary review from this Court, which we granted to examine the lower appellate court's holding that there exists sufficient evidence to sustain the conviction.

The evidence presented at trial established that on November 9, 1985, Sandra Tubbs was working as a cashier at the Gulf Majek Market in Lancaster. At around 8:25 a.m., three males—later identified as appellant, Clarence Rhynes and Stanley Coleman—entered the store together. Rhynes went to the ice cream machine, Coleman went to the counter, and appellant stood near the only door. Coleman asked Tubbs for a package of cigarettes. Tubbs gave Coleman the cigarettes and rang up the sale. Coleman paid part of the amount owed and asked Rhynes for the balance. Rhynes gave Coleman the money and then went behind the counter. Rhynes pointed a gun at Tubb's face and demanded that she give him all of the money. Coleman and appellant remained in their original locations within the store. After Coleman began grabbing the money in the cash register, appellant moved closer to the counter but still maintained the lookout. Later, Coleman and appellant went behind the counter. Appellant removed all the coins from the cash tray and Coleman took several cartons of cigarettes. As the three left the store appellant grabbed a display of watches before he fled. A fingerprint found on the underside of the cash register was positively identified as being that of appellant.

After hearing the evidence, the jury convicted appellant of aggravated robbery. On appeal, he challenged the conviction asserting that the jury was not authorized by the charge to convict him as a party to the aggravated robbery since the application paragraph thereto authorized his conviction only as the primary actor. The Court of Appeals disagreed and affirmed the conviction after it determined that the jury charge, read as a whole, authorized appellant's conviction since it contained an abstract instruction on the law of parties which both the State and appellant's trial counsel pointed out to the jury in their respective final arguments. *Jones,* 774 S.W.2d at 11–12 citing *Garrett v. State,* 749 S.W.2d 784, 803 (Tex.Cr.App.1983) (opinion on rehearing). We granted appellant's petition for discretionary review to determine the correctness of this holding.

This Court has delivered several opinions concerning how the sufficiency of evidence is to be assessed in light of the charge given to the jury.[2] The earliest case is that

---

1. Four of the thirteen Justices on the Dallas Court of Appeals dissented to the majority opinion.

2. See, e.g., *Arceneaux v. State,* 803 S.W.2d 267 (Tex.Cr.App.1990); *Nickerson v. State,* 782 S.W.2d 887 (Tex.Cr.App.1990) (plurality opinion); *Stephens v. State,* 717 S.W.2d 338 (Tex.Cr.

App.1986); *Garrett v. State,* 749 S.W.2d 784 (Tex.Cr.App.1986) (plurality opinion); *Fain v. State,* 725 S.W.2d 200 (Tex.Cr.App.1986); *Boozer v. State,* 717 S.W.2d 608 (Tex.Cr.App.1984); *Williams v. State,* 696 S.W.2d 896 (Tex.Cr.App. 1985); *Ortega v. State,* 668 S.W.2d 701 (Tex.Cr. App.1983) (opinion on rehearing); *Benson v. State,* 661 S.W.2d 708 (Tex.Cr.App.1982) (plural-

of *Benson v. State*, 661 S.W.2d 708 (Tex. Cr.App.1983) (opinion on rehearing) cert. denied, 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984). *Benson* was the first case before this Court regarding the felony offense of retaliation. The applicable statute provided that it was an offense if one "intentionally or knowingly harms or threatens another ... in retaliation for the service of another as a witness." See Act of June 14, 1973, Ch. 399, section 1, Tex. Gen.Sess.Laws 883, 954 (1973) (codified as V.T.C.A., Penal Code, Section 36.06) *amended by* Act of June 19, 1983, Ch. 558, Section 4, Tex.Gen.Sess.Laws 3237–3238 (1983).[3] The evidence at Benson's trial demonstrated that he broke into his ex-wife's home and attempted to persuade her to drop assault charges. The trial court charged the jury that "a person commits an offense of retaliation if he intentionally or knowingly harms another by an unlawful act *in retaliation for or on account of the service of another as a witness." Benson*, 661 S.W.2d at 710 (emphasis in the original). The jury convicted Benson and on appeal he attacked the sufficiency of the evidence to sustain this conviction asserting that the retaliation statute created an offense for threatening a "witness," but not for threatening a "prospective witness." This Court agreed and concluded that under the charge, the only authorized verdict was "not guilty" since the evidence proved only that the person threatened was a prospective witness. On rehearing, the State argued that the sufficiency of evidence must be measured exclusively against the indictment and not the charge. A majority of this Court disagreed and found the indictment alone to be an inadequate measurement for sufficiency challenges. Without citing authority, the Court held that "when a charge is correct for the theory of the case presented we review the sufficiency of the evidence in the light most favorable to the verdict by comparing the evidence to the indictment *as incorporated into the charge.*" 661

S.W.2d at 715 (emphasis in the original). *Benson* has thus become the foundation for subsequent decisions. See generally Seymore & Thielman, *Appellate Reversal for Insufficient Evidence in Criminal Cases: The Interaction of the Proof and the Jury Charge*, 16 Am.J.Crim.Law 161 (1989).

*Ortega v. State*, 668 S.W.2d 701 (Tex.Cr. App.1983) (opinion on rehearing) came after *Benson.* The State prosecuted Ortega for credit card abuse. The statute under which he was charged prohibited the use of a credit card with the intent to obtain property *or* services. See V.T.C.A., Penal Code, Section 32.31(b)(2). However, the application section of the jury charge in the *Ortega* case tracked the conjunctive language of the indictment, requiring proof that the defendant "intentionally and knowingly intend[ed] to fraudulently obtain property *and* services" by presenting a credit card in exchange for clothing while knowing that the card had not been issued to him. The original opinion from this Court determined that the evidence was sufficient to sustain the conviction, finding that the employee's acts of receiving and processing the papers necessary for a credit transaction constituted services fraudulently obtained. 668 S.W.2d at 704–705. On rehearing, Judge Campbell, writing for the Court, reexamined the original holding. While conceding that the sales clerk's efforts in completing the sale was a "service," Judge Campbell nonetheless held that this service was insufficient "to show such labor was the intended object of the appellant's desire.... The steps taken to extend him credit were merely incidental to the transaction." 668 S.W.2d at 706. Because there was no evidence that the defendant acted with the intent to obtain both property *and* services, the proof was insufficient in light of the charge requiring such; a judgment of acquittal was therefore ordered. 668 S.W.2d at 707.[4]

ity opinion on rehearing) cert. denied, 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984).

3. The amendment to Section 36.06 cured the *Benson* problem by adding "prospective witness" as a protected category.

4. In response to the State's argument that the

The holdings in *Benson* and *Ortega* lead to *Boozer v. State*, 717 S.W.2d 608 (Tex.Cr. App.1984), where this Court considered a charge containing an abstract instruction to the jury that a witness was an accomplice "as a matter of law." As such, the State was obligated to corroborate the so-called accomplice testimony with other evidence "tending to connect the defendant with the offense committed." See Article 38.14, V.A.C.C.P. Although it was clear that the State's witness was not even an accomplice, much less an accomplice as a matter of law, this Court reaffirmed the holding in *Benson*, writing that "the sufficiency of the evidence is [to be] measured by the charge that was given." 717 S.W.2d at 610.[5] Because in *Boozer* there was no evidence to connect the defendant to the crime other than that of the so-called accomplice, a majority of the Court determined that the evidence was insufficient. Thus, the State was denied an opportunity to retry the defendant.

Most recently in *Arceneaux v. State*, 803 S.W.2d 267 (Tex.Cr.App.1990), this Court reviewed the sufficiency of evidence for the possession of cocaine. In that case, the State introduced the testimony of a chemist that he had examined the substance found in the defendant's possession and determined it to be cocaine. The actual cocaine was not introduced into evidence. How-ever, the jury was instructed, in an abstract portion of the charge, that "[b]efore you would be warranted in convicting the defendant you must find from the evidence beyond a reasonable doubt that the exhibit introduced in evidence by the State is cocaine." Because the cocaine was never introduced into evidence (as it had been depleted in the scientific analysis to determine that it was in fact cocaine), this Court concluded that under the charge, the jury could not have found the defendant guilty; that is, the jury was not authorized to find the defendant guilty. The majority wrote:

"... Before the jury was authorized to convict appellant, it was required to find from the evidence introduced during trial that the 'exhibit' was cocaine. Therefore, we cannot agree with the State that the instruction was surplusage, regardless of the fact the prosecution was not required under the circumstances to introduce the actual controlled substance....

"... [O]nce the instruction ... was incorporated into the charge in such a manner as to require the jury to find the State had introduced cocaine into evidence before it could render a verdict of guilt, the State was put to the burden of either objecting to the instruction, requesting a modification of the one submitted, or proving the substantive fact therein.

word "service" was surplusage, the *Ortega* Court held that surplusage does not exist in the trial court's charge to the jury. 668 S.W.2d at 707 n. 5. Nothing was cited as authority.

5. Moreover, *Boozer* incorporated into our law a concept of "authorization." That is, the charge was the mechanism that authorized the jury to convict such that if the evidence did not conform to the charge the jury's verdict was not authorized and the conviction was set aside as not being supported by the evidence. Specifically, the Court wrote in *Boozer*:

"Because a verdict of 'guilty' necessarily means the jury found evidence of that on which it was authorized to convict, the sufficiency of the evidence is measured by the charge *that was given*. It follows that if evidence does not conform to the instruction given, it is insufficient as a matter of law to support the only verdict of 'guilty' which was authorized." *Boozer*, 717 S.W.2d at 610–611 (footnote omitted and emphasis in the original).

This concept of "authorization" appears to be in conflict with the Supreme Court's seminal case dealing with a sufficiency analysis. In *Jackson v. Virginia*, 443 U.S. 307, 318, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979), the Supreme Court explicitly related that:

"The question whether the evidence is constitutionally sufficient is of course *wholly unrelated to the question of how rationally the verdict was actually reached*. Just as the standard announced today does not permit a court to make its own subjective determination of guilt or innocence, it does not require scrutiny of the reasoning process actually used by the factfinder—if known." 443 U.S. at 319 n. 13, 99 S.Ct. at 2789 n. 13 (emphasis added).

When one begins to incorporate concepts of "authorization," it necessarily means that one attempts to review the evidence from the jury's perspective of what the evidence did or did not prove.

Since there was no cocaine introduced after laboratory testing, the State clearly could not meet its burden of production. Nor did the State object to insertion of this ... instruction. Based upon the prosecutor's own inaction, the State was held to a higher level of proof than necessary, and the burden was not met in this case. The verdict of guilt in the case is therefore contrary to the law and evidence and must be set aside." 803 S.W.2d at 271. (footnote omitted).

Thus, while *Boozer* and *Arceneaux* represent that line of cases where this Court has looked to sections *other than* the application section of the jury charge to determine if the jury's finding of guilt has been "authorized," other cases from this Court have looked *only to* the application section in making a sufficiency analysis. For example, in *Garrett v. State,* 749 S.W.2d 784 (Tex.Cr.App.1986) (plurality opinion on rehearing) and *Nickerson v. State,* 782 S.W.2d 887 (Tex.Cr.App.1990) (plurality opinion), this Court exclusively reviewed only the application section of the charge to determine whether the evidence in each case was sufficient.

In *Garrett,* the defendant was charged with having "knowingly caused the death of an individual, [the complainant] by shooting her with a gun." The facts at trial demonstrated that the complainant, along with her family and a neighbor, were having barbecue outside the complainant's home when Garrett joined them. After a while a fight ensued over the neighbor shooting Garrett's dog. Garrett went to her car, retrieved a rifle and fired a shot at the neighbor. The bullet missed the neighbor but killed the complainant who was at that time inside her mobile home. There was no evidence that the defendant intentionally and knowingly killed the deceased but the State proceeded on the theory of transferred intent. See V.T.C.A., Penal Code, Section 6.04(b)(2).[6] The trial court provided the jury with an abstract instruction on the law of transferred intent in the

charge but failed to apply this law to the facts of the case in the application section thereof. Four of this Court's judges determined that the abstract instruction on the law of transferred intent was not sufficient to bring that theory of law before the jury. See *Garrett,* 749 S.W.2d at 789 (original opinion per Clinton, J. with three judges joining); *Garrett,* 749 S.W.2d at 802–803 (opinion on rehearing per Campbell, J. with two judges joining).

Added to the opinion's inability to garner a majority vote is its inconsistent reasoning. First the opinion on rehearing, agreeing with the original plurality opinion, decides that the abstract instruction on the law of transferred intent contained within the charge is insufficient to put that theory of culpability before the jury but then insists that:

"At first blush, this case seems to require that a measurement of the sufficiency of the evidence be limited to a sole consideration of the application paragraph of the jury charge. This would be a misapplication of the rule announced in [*Boozer, Ortega* and *Benson.* These cases] hold that sufficiency of the evidence be measured against the jury charge, *which we interpret to mean the entire charge."* *Garrett,* 749 S.W.2d at 802–803 (citations and footnote omitted; emphasis added).

In short, the *Garrett* opinion says one thing and does the opposite.

The same thing occurs in *Nickerson.* First the opinion decides that an abstract instruction on the law of parties is insufficient to put that theory of culpability before the jury but then repeats the *Garrett* language: "A charge must be treated *as an entirety,* and regard must be had to the connection and interdependence of its several parts." 782 S.W.2d at 891 (emphasis added).

Thus, whereas some of our cases have looked only to the application section of the jury charge to determine if the jury was

---

**6.** Section 6.04(b)(2) provides that "[a] person is nevertheless criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contem-

plated, or risked is that ... a different person or property was injured, harmed or otherwise affected."

"authorized" to convict the defendant, other cases have looked to other parts of the charge. The result is necessarily perplexing. One must ask: When will the application section alone suffice to demonstrate an "authorization" for the jury to find the defendant guilty? When is it necessary to look to other parts of the charge to find this "authorization"? And why the difference?

To answer these questions it is important to remember that the goal in any sufficiency analysis is to determine if the evidence presented at trial "could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979). That is, the "relevant question is whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319, 99 S.Ct. at 2789. But *Jackson* leaves open to debate, and what has puzzled this Court, the question of what is meant by "the essential elements of the crime" and what is to be used as the bench mark for this determination. It is quite clear that penal statutes in and of themselves, will often prove inadequate to gauge the essential elements of the crime. The statutes only define the proscribed conduct; they may set out the statutory elements of the crime but they fail to incorporate such issues of law that may be necessary for a complete sufficiency analysis. For example, the penal statutes defining the criminal conduct fail to set out such concepts as accomplice testimony, see, e.g., *Boozer*, 717 S.W.2d at 610 n. 4, transferred intent, see, e.g., *Garrett*, 749 S.W.2d at 784, or, as is in the case before us today, the law of parties. Moreover, the indictment or information which may merely track the applicable penal statute to be considered legally adequate will also provide an inadequate bench mark for the essential elements of the crime. See and cf., *Studer v. State*, 799 S.W.2d 263 (Tex.Cr.App.1990) (indictment found sufficient although it lacked an element of the offense); *Ex parte Gibson*, 800 S.W.2d 548 (Tex.Cr.App.1990). Two cases from this

Court offer help—the first is a re-examination of *Benson v. State*, 661 S.W.2d 708 (Tex.Cr.App.1982) (opinion on State's second motion for rehearing) cert. denied, 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984), and the second is *Fain v. State*, 725 S.W.2d 200 (Tex.Cr.App.1986).

As discussed above, *Benson* was the first case to come out of this Court to determine that the charge was the bench mark for a consideration of the essential elements of the offense but the *Benson* Court continued:

"In *Jason v. State*, 589 S.W.2d 447, 452 (Tex.Cr.App.1979), we said that the 'language of the verdict should be interpreted in light of the indictment and charge.' *Jason* involved an improper verdict form. This Court affirmed the conviction in *Jason*, holding that all three—the verdict, indictment and charge—should be examined together. The same theory applies to this case for [a] sufficiency determination. We hold that *when a charge is correct for the theory of the case presented*, we review the sufficiency in a light most favorable to the verdict by comparing the evidence to the indictment as incorporated into the charge." 661 S.W.2d at 715 (emphasis added).

The *Benson* Court found the evidence to be insufficient because the State's theory of the case—as set out in the charge that was *first* determined to be an adequate reflection of the State's theory—was not supported by evidence. This Court clearly established that "[t]he charge together with the proof and the indictment reflects (sic) the State's theory of the offense." 661 S.W.2d at 715. That is, integral to the Court's use of the charge as the measure for its sufficiency analysis was the initial determination that the charge accurately reflected the State's theory of the case. In *Benson*, this Court deemed the evidence to be insufficient, not because the charge *alone* was not supported by evidence but because the State's theory of the case, *as it was correctly and adequately reflected in the charge*, was not supported by the evidence adduced at trial. The *Benson* Court attempted to make this clear:

"The charge in this case was not erroneous. The application paragraph tracked the indictment exactly. A common sense reading of the charge to determine if the State met its burden and proved all the essential elements *consistent with the State's theory of the case,* meant that the jury would have to refer to the definition of the offense of retaliation in order to determine if all elements of that offense had been proved. It appeared to all intents and purposes that the *State's theory* of retaliation involved a 'witness.' The proof does not support a conviction *under that theory.*

\*　\*　\*　\*　\*　\*

"In the instant case the State did not object to the burden placed on it by the trial court's instructions to the jury. There is nothing to suggest that the State's theory was anything but retaliation as directed to a 'witness.' Unfortunately for the State the evidence was insufficient to support that theory, given this Court's interpretation of 'witness.' " 661 S.W.2d at 715.

Thus, the State's theory is derived from the indictment, the proof at trial and the charge (along with other indicia of the State's theory, e.g., opening and closing statements by the prosecution). When the charge is correct for the State's theory of the offense, then—and only then—it will provide an adequate bench mark for a sufficiency determination because only then does it set out "the essential elements of the case." This necessarily means that when the charge does not set out the State's theory of the case, the charge will not provide an adequate bench mark. This is precisely what occurred in *Fain.* In that case, the State's theory of the case was not reflected in the charge and quite correctly this Court refused to determine sufficiency in light of the charge. This Court wrote:

"In the instant case, no one maintains that the trial court's instruction was correct for 'the theory of the case presented.' Instead, in setting forth his insufficient evidence claim for the Court of Appeals, appellant showed that the trial court's instruction was manifestly incorrect. Appellant's claim as presented did not constitute a valid claim of insufficient evidence. The Court of Appeals did not err in addressing instead the predicate claim of jury charge error." 725 S.W.2d at 202.

What can be gleaned from *Benson* and *Fain* (and what has been totally and inexplicably disregarded by other cases concerning a sufficiency analysis) is that only when the actual charge is correct for the theory of the case—the theory being discerned from the indictment, the proof at trial and the charge—can the charge be an adequate measure for the essential elements of the offense and a reviewing court may properly look to it alone to make a sufficiency analysis. When, however, the actual charge is incorrect for the State's theory, it will not equip the reviewing court with an adequate bench mark for its sufficiency analysis. Given such a situation, the reviewing court must then discern and measure the evidence against the State's theory of the case.

In the case that is before us, the parties' theory of culpability was inadequately reflected in the charge since it was not included in the application section thereof. Nevertheless, it is more than evident that the State's theory of the offense in this case was reliant upon a parties' theory of culpability. The indictment charged appellant with an aggravated robbery but the jury charge contained the following:

"All persons are parties to an offense who are guilty of acting together in the commission of the offense if the offense is committed by his own conduct, by the conduct of another for which he is responsible, or both.

"A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. Mere presence alone will not constitute one a party to an offense."

This instruction was emphasized by the first State's attorney to argue before the jury:

"I want to talk to you for a brief moment about the law of parties. We talked about that on voir dire. And I don't want you to be confused by the Court's charge. The Court, on page four of the charge, sets forth the elements of the offense, that on or about a certain date that defendant committed an aggravated robbery by using or exhibiting a deadly weapon.

"You must consider that instruction in connection with the law of parties. Now the law of parties is set forth for you on page six of the charge. The evidence has been, the testimony has been that this defendant was not the one actually wielding the gun. All right? But he was there, and the evidence has been that he knew about the use of the gun, he knew about the robbery, and he was an affirmative, active, lucid, thinking participant in the commission of the aggravated robbery. All right. . . .

"He's a party to an aggravated robbery; he's guilty of an aggravated robbery."

Finally, the State's co-attorney also argued and in rebuttal to the final arguments of defense counsel, he told the jury to "[r]ead that charge. Read that section dealing with parties. Read it." [7]

From all of the above, I conclude that the State's theory of the case specifically de-

pended upon a parties' theory of culpability. That is, I would conclude that the State sought to prove that appellant, acting as a party to the offense, committed an aggravated robbery. Even appellant agrees that this was proven at trial. As such, the jury's finding of sufficient evidence to support the essential elements of the offense satisfies the constitutional dictates of *Jackson v. Virginia* in that "*any* rationale trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319, 99 S.Ct. at 2789. Although not "authorized" by the application section of the jury charge, the jury's finding of guilt is authorized by the State's theory of the case and the charge as a whole.

The Dallas Court of Appeals, attempting to distinguish *Garrett,* wrote:

"Justice (sic) Campbell, writing for the court, acknowledges that despite the holding in *Garrett,* the cases of *Boozer, Ortega,* and *Benson* require that the sufficiency of the evidence must be measured against the 'entire charge.' On rehearing, Justice (sic) Campbell expresses concern as to *Garrett*'s effect on subsequent cases. He then cautions that *Garrett* is the product of an 'unusual set of circumstances' and limited in its scope. Consequently, we conclude that the holding in *Garrett,* by its own terms appears to be limited to cases involving transferred intent where the issue concerns in-

---

**7.** Even the defense knew that the State intended to rely upon a parties theory of culpability. The defense attorney began his argument to the jury describing the law of parties: "[i]n order to determine whether he's guilty of aggravated robbery, you must determine if he, Kevin Jones, solicited, encouraged, directed or aided or attempted to aid Clarence, the person with the gun, who put [the complainant] in fear." Thereafter, throughout his argument, he continues to emphasize that there is insufficient evidence to prove that appellant acted as a party to the aggravated robbery. In his arguments, the defense attorney told the jury that:

"Now if you find that Kevin aided or encouraged or solicited that act, then you find he's guilty of robbery. If you find that he aided, advised or encouraged the use of the deadly weapon, then he's guilty of aggravated robbery. It's that clear. It's right here in the Court's charge."

The last point the defense attorney made to the jury was:

"Ladies and gentlemen, the Judge wrote the charge. You can be sure I didn't hold a gun on Judge Hampton and force him to put something in there that doesn't belong in here. [The Prosecutor] may wish that it wasn't in here, but the charge tells you that you must find that Kevin aided or commanded or encouraged the use of the weapon before he's guilty of aggravated robbery. If he didn't do that, but he did aid or command or encourage this threatening [the complainant], then he can be guilty of robbery, and if you have a reasonable doubt as to whether he's guilty of aiding or commanding or encouraging the placing of [the complainant] into fear, you must find him not guilty."

sufficiency of the evidence." *Jones,* 774 S.W.2d at 11–12 (footnote and citations omitted).

I feel, however, that *Garrett* and its progeny, *Nickerson,* cannot survive.

It is clear that the State presented its case of *Garrett* to the jury upon a theory of transferred intent. Indeed, an instruction—albeit not within the application section—was given to the jury setting out the law of transferred intent. *Garrett* relied solely upon the application section of the charge to be the bench mark for the sufficiency analysis. Since the actual charge that was given in *Garrett* was determined to be unsatisfactory to place the State's theory of culpability before the jury, the *Garrett* Court should have measured the evidence only against the State's theory—presupposing a hypothetically correct jury charge. It should be remembered that a reviewing court is to judge sufficiency not by what a particular jury would decide, but by what "any" rational trier of fact would decide. With its heavy reliance upon the actual charge that was given in *Garrett,* the Court misapplied the safeguards promulgated by the Supreme Court in *Jackson v. Virginia.* In Garrett's case the evidence would have been sufficient under the theory of transferred intent. This was the State's theory of the case throughout the proceedings. Cf., *Stephens v. State,* 717 S.W.2d 338 (Tex.Cr.App.1986) (theory of transferred intent not mentioned until appeal). As such, any error in the *Garrett* charge was just that—jury charge error, not insufficient evidence requiring an appellate acquittal. To the extent that *Garrett* is in conflict, I would overrule it, along with its progeny *Nickerson.*

Because of the failure of a majority to recognize the flaws inherent in these cases, I respectfully dissent.

WHITE, Judge, dissenting.

Today an aggressive and assertive majority[1] of this Court indicates that intelligent jurors in Texas cannot read plain English and then use common sense during their deliberations in criminal trials. The majority opinion relies on this Court's decision in *Garrett v. State,* 749 S.W.2d 784, at 801–804 (Tex.Cr.App.1986) (opinion on rehearing, 1988), to reverse the decision of the Court of Appeals and the judgment of the trial court. I joined the opinion in *Garrett,* but only to concur in the result reached in that opinion. Application of the *Garrett* opinion's reasoning in the instant case has produced a result which, at best, makes little sense in light of the record before us, and at worst, produces an unjust result.

In the instant case, the majority repeats the holding in *Garrett* that a jury is only authorized to convict a defendant upon a theory of law that is countenanced within, and authorized by, the application paragraph:

"What can be gleaned from *Garrett, Apodaca,* and predecessor case law is that while we view sufficiency of the evidence against an "entire charge", *Garrett,* 749 S.W.2d at 802–803, a charge which fails to apply a theory of law to the facts of the case is insufficient to authorize conviction on that theory, even where the theory of law is abstractly defined in the charge. *Id.,* 749 S.W.2d at 789 n. 6. "mere juxtaposition does not amount to authorization." *Id.*"

"This rationale is founded upon the notion that a charge which contains an abstract paragraph on a theory of law, but does not apply the law to the facts of the case, deprives the defendant of a "fair and impartial trial." *Harris v. State,* 522 S.W.2d 199, 202 (Tex.Cr.App.1975), citing *Fennell v. State,* 424 S.W.2d 631 (Tex.Cr.App.1968). This type of error "in the charge goes to the very basis of the case so that the charge fails to state and apply the law under which the accused is prosecuted." *Harris,* 522 S.W.2d at 202, and cases cited therein."

Majority opinion, p. 670.

Under this interpretation, any evidence that proves a theory which is not incorporated into the application paragraph is discounted. In the instant case the majority opinion implies that if the rest of the evi-

---

1. Judge Marvin Teague, *Words and Phrases.*

dence admitted at trial is not sufficient to prove up the theories which are included in the application paragraph, a defendant is entitled to a reversal and acquittal.

There are several problems with this approach. First, in terms of the instant case, the majority's opinion ignores the state of the record, and the fact that in voir dire, oral argument and the charge itself, the jury was urged to apply the law of parties to the evidence before it to determine whether or not appellant was guilty. During the opening state's argument at the close of evidence in the instant case, the attorney for the state reviewed what had been said in voir dire[2] about the law of parties, and then discussed the jury's need to apply that law to the facts of the instant case:

"I want to talk to you for just a brief moment about the law of parties. We talked about that on voir dire. **And I don't want you to be confused by the Court's charge. The Court, on Page Four of the charge, sets forth the elements of the offense, that on or about a certain date that defendant committed an aggravated robbery by using or exhibiting a deadly weapon.**[3]

**"You must consider that instruction in connection with the law of parties. Now, the law of parties is set forth for you on Page Six of the charge.** The evidence has been, that this defendant was not the one actually wielding the gun. All right? But he was there, and the evidence has been that he knew about the use of the gun, he knew about the robbery, and he was an affirmative, active, lucid, thinking participant in the commission of the aggravated robbery. All right. He knew about the gun, fully supported the use of the gun, made no effort to stop the use of the gun, participated in the proceeds from the robbery, got part of them himself. He knew what was going on. All right?

"To the extent that he knew about that, he was a participant in the robbery. You answer all those questions yes.

He's a party to an aggravated robbery, he's guilty of an aggravated robbery. He is not guilty of robbery, the lesser included offense. All right?"

After the opening State's argument was concluded, appellant's attorneys argued the issue of appellant's guilt as a party to the instant offense, in light of the trial court's instructions to the jury:

"In order to determine whether he's guilty of aggravated robbery, you must determine if he, Kevin Jones, solicited, encouraged, directed, or aided, or attempted to aid Clarence, the person with the gun, who put Sandra in fear.

"Now, the question is what did Kevin do? Did he solicit the use of the deadly weapon? Did he encourage it? Did he direct it or did he aid in it? And if he did, in what way?"

. . . . .

"Now, if you find that Kevin aided or encouraged or solicited that act then you find that he's guilty of robbery. **If you find that he aided, advised, or encouraged or solicited the use of the deadly weapon, then he's guilty of aggravated robbery. It's that clean. It's right here in the Court's charge.**"

. . . . .

"**So read the Court's charge, ladies and gentlemen. On Page Four he tells you. You've got to put the aiding and encouraging the use of the weapon onto Kevin Jones beyond a reasonable doubt before you can find him guilty of aggravated robbery.** That's why the other robbery is in there, because if you think he's guilty of being a party to threatening Sandra and placing her in fear but that he did not encourage or advise the use of the deadly weapon."

At the closing argument, the attorney for the State added a final word about how the law of parties was critical to the jury's decision whether appellant was guilty of aggravated robbery:

---

**2.** In the instant case, appellant waived the recording of voir dire by the court reporter.

**3.** This was the application paragraph section of the trial court's instructions.

... "We got the goodbye. Any other name you want to call him. He participated. My God.

**"Read that charge. Read that section dealing with parties. Read it."**

The trial court then gave the jury its last instructions before they retired to their deliberations:

"Ladies and gentlemen, you can now retire to the jury room and consider your verdict. Elect your foreman, and when you have reached a unanimous verdict, knock on the door, and the Bailiff will attend to you. You may retire."

The majority opinion assumes, in effect, that the instant jury not only ignored everything in the charge after the application paragraph, but also that they paid no attention to either the trial court's reading of the entire charge to them, or to the entreaties of every one of the lawyers when they explained the charge to them.

This benign neglect of the record by the majority produced the only unfair and unjust result in the instant case. Appellant, however, received a full measure of justice by virtue of the efforts of the attorneys and trial court during his trial to ensure that the jury would only convict him of aggravated robbery if they first found that he was a party to the instant offense. Now, the majority opinion provides him with far more than the justice and fairness that he was entitled to as a citizen of this state. He has been granted a free ride through the criminal justice system.

There are also problems at law which arise from the majority opinion's end run around a principle set out in *Benson v. State*, 661 S.W.2d 708 (Tex.Cr.App.1982) (on rehearing), and in *Boozer v. State*, 717 S.W.2d 608 (Tex.Cr.App.1984). In *Benson* and *Boozer*, this Court explained the principle that sufficiency of the evidence is to be measured against the jury charge, "which we interpret to mean the entire charge." See *Garrett*, 749 S.W.2d, at 803 (on rehearing). While the language of the majority opinion attempts to reconcile *Benson* and *Boozer* with *Garrett*, it is effectively overruling *Benson* and *Boozer* by placing a de facto limit upon appellate consideration of

the evidence admitted at trial to only that evidence which supports the theories set out in the application paragraph. The majority opinion accomplishes this by not treating the flawed application paragraph as a trial error which would require, at most, a reversal and remand for a new trial under a corrected charge. Instead, the majority opinion moves from holding there was error in the charge to deciding to exclude from a self-generated sufficiency review all evidence affected by the error in the application paragraph.

From now on, any evidence which supports the verdict of the finder of fact, but which applies to theories explained outside the application paragraph is to be ignored on appellate review. From the majority's opinion, it is apparent that sufficiency of the evidence will be measured only against those theories of law which are included within the application paragraph, or the pages immediately preceding it.

To assume that a jury, during its determination of the sufficiency of the evidence, can not apply a theory of law which is not included within an application paragraph because it is in "juxtaposition" to that paragraph, as opposed to "authorization" by that paragraph, and that they must then have also ignored all the evidence they have heard at trial in support of that theory because of this rhetoric subtlety, is absurd in the extreme. This becomes very apparent in a case such as the instant, where all of the attorneys on both sides of the lawsuit not only extensively argued the law of parties, but actually referred to the exact pages in the charge where that theory of law was explained. This Court has, in the past, believed that sufficiency of the evidence must be measured against an entire charge in order to avoid results such as in the instant case.

Another problem at law exists with the majority opinion's assumption that the jury is bound to comply with only those instructions which come within, and before, the application paragraph. The majority's decision to implicitly confer an interpretation of exclusivity upon the preamble to the application paragraph ("Now, bearing in mind

the foregoing instructions,") is without precedent. It can serve no purpose other than to subvert our prior decisions that a jury relies upon an entire charge in deciding the question of a defendant's guilt or innocence.

The majority also errs when it assumes that the jury was incapable of working with the entire charge throughout its deliberations to carry out all the duties assigned to it. There are no false lines of demarcation within the jury charge to interfere with the jury carrying out its assignment. For example, the first duty of the jury in the instant case, as it was instructed by the trial court before it retired to begin its deliberations, was to elect its foreman. This instruction was part of the last page of the charge. The jury had to read through the charge to get to that instruction, before it could start any of its deliberations.

Also, during the course of its deliberations on the question of appellant's guilt or innocence, the jury was instructed to not consider, or hold against appellant, that he did not testify in the instant case. This fact was not to be taken into consideration by the jury "for any purpose whatsoever." This instruction appears on page seven of the charge, after the instruction on the theory of the law of parties on page six. This instruction is important to a jury's deliberations on the sufficiency of the evidence in that an appellant's decision to not testify is not an element of evidence to be weighed against appellant in the favor of the state. Yet, we have never held that a jury has disregarded this important instruction merely because it is not in the pages "foregoing" the application paragraph.

One of a jury's duties is to consider the charge in its entirety throughout its deliberations, a duty which this Court should not simplistically presume they are incapable of handling solely on the basis of the numbering of the pages of the charge, or in the manner in which the district judge's secretary stapled the pages of the charge together.

After today's ruling, all trial judges in this State should begin their charge to the jury with "every word following this sentence is included and made a part of the application paragraph of this charge."

I respectfully dissent because the aggressive and assertive majority turns the jury system upside down.