James William COX, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–91–105 CR.

Court of Appeals of Texas, Beaumont.

May 20, 1992.

---

Blaise Heaney, Houston, for appellant.

Clyde Herrington, Dist. Atty., Lufkin, for state.

Before WALKER, C.J., BROOKSHIRE and BURGESS, JJ.

## OPINION

WALKER, Chief Justice.

This is an appeal from a conviction of the felony offense of Illegal Expenditure.[1] Following their guilty verdict, the jury sentenced appellant to eighteen (18) years confinement in the Institutional Division of the Texas Department of Criminal Justice. The jury also assessed a fine of $250,000. Appellant raises three points of error on appeal, *viz:*

Ground of Error One: The county [sic] court erred in denying appellant's motion for directed verdict where the State failed to prove up the allegations of Illegal Investment.

Ground of Error Two: The trail [sic] court abused its discretion by not granting appellants (sic) motion for quantitative weight analysis of alleged marihuana subsequent to removal of non-germinable seeds and mature stalks.

Ground of Error Three: The trial court erred in not granting appellant's motion to suppress where appellant's arrest was warrantless and without probable cause.

Since a challenge to the trial court's ruling on a motion for an instructed verdict is in actuality a challenge to the sufficiency of the evidence, *see Madden v. State,* 799 S.W.2d 683, 686 (Tex.Crim.App.1990), *extension denied,* 498 U.S. ——, 111 S.Ct. 902, 112 L.Ed.2d 1026 (1991), *cert. denied* 499 U.S. ——, 111 S.Ct. 1432, 113 L.Ed.2d

483 (1991), a rendition of the facts is in order.

Appellant's indictment alleged that he, "... knowingly and intentionally financed and invested funds the defendant knew and believed were intended to further the commission of an offense, to-wit: possession of a usable quantity of marihuana of less than two hundred pounds but at least fifty pounds, ..." Appellant was tried along with two co-defendants, James Lovelady and Robert Perry. The State called six witnesses for their case-in-chief. Of those six, five of the witnesses were members of the Deep East Texas Narcotics Task Force. The State's other witness was a chemist employed by the Texas Department of Public Safety Crime Laboratory located in Tyler, Texas. Appellant presented no evidence in his defense.

A composite of the evidence in the light most favorable to the State showed that, while working undercover, Deputy James Thornton received a series of phone calls from an individual wanting to purchase a large quantity of marihuana. A deal was finally struck for Deputy Thornton to provide seventy-five pounds of marihuana for the price of $500 per pound. The caller was advised that Deputy Thornton would get a room at a motel in Lufkin, specifically Room 113 at the Expo Inn, and that the deal would take place there. Deputy Thornton advised the task force members that the buyers would be two, possibly three white males driving an older, white station wagon.

The task force set up surveillance in and around the Expo Inn. At some point, appellant and his two co-defendants arrived in an older model white station wagon. Appellant was the driver of the vehicle and parked it initially at Charlie's Restaurant. The restaurant was located approximately one hundred yards east of the Expo Inn. Appellant and his two companions were seen entering the restaurant. Moments later, Lovelady and Perry exited the restaurant leaving appellant in the restaurant. Lovelady and Perry entered the station wagon and drove over to the Expo Inn and

---

1. TEX.HEALTH & SAFETY CODE ANN. § 481.126 (Vernon Pamphlet 1992).

parked in front of room 113. Lovelady and Perry then met Deputy Thornton who was still working in the undercover guise of a drug dealer. Following a brief conversation, Thornton took Lovelady to the task force vehicle containing large bags of marihuana. Lovelady inspected the bags and then turned over a large amount of money to Thornton. Thornton wrapped the money in a towel and left it in the room. Thornton, Lovelady and Perry then went back to where the vehicles were parked ostensibly to transfer the bags of marihuana from the task force vehicle to the station wagon. Before any transfer took place, however, Thornton gave a prearranged signal, and the task force moved in and arrested Lovelady and Perry. It should be noted that the entire transaction was recorded on audio cassette tape and filmed by a hidden, hand-held video camera.

Back at the restaurant, appellant was being watched closely by Sergeant John Fountain of the task force. Fountain testified that once Lovelady and Perry left the restaurant, he (Fountain) entered and seated himself so as to be able to observe appellant. Fountain testified that he observed appellant "seated at the table against the wall in the west end of the restaurant facing the direction of the motel." The appellant "appeared to be looking in the direction of the motel." Fountain testified that the total elapsed time he and appellant were in the restaurant was "maybe five minutes or so;" and as to appellant's actions that whole time, "[a]s far as I know he sat there and looked out the window the whole time." Fountain stated that he did not observe appellant eat anything; that appellant was sitting in a section of the restaurant where no other patrons were seated; and that the view from the window appellant was looking out of consisted of the east side of the motel and the parking area of the two rooms that were involved in the marihuana deal. Fountain further testified that as he had no radio contact with the rest of the task force, he had to wait until other members entered the restaurant and informed him (Fountain) that the deal "was down" so that Fountain could arrest appellant.

Fountain admitted on cross-examination that at the time of appellant's arrest, appellant did not run, did not have any guns on his person, did not have any drugs on his person, and was not doing anything. Neither Fountain nor any of the other State's witnesses testified as to the ownership of the station wagon appellant had been driving. There was no evidence presented at the punishment phase of the trial by either party.

█ When sufficiency of the evidence to sustain a conviction is questioned on appeal, the standard of review is whether, viewing all of the evidence in the light most favorable to the verdict, any rational jury could have found all of the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The State, in their brief, admits that appellant's role in the transaction was different than that of his co-defendants, but that the evidence was sufficient to convict appellant as a party to the offense. *See* TEX.PENAL CODE ANN. §§ 7.01 and 7.02 (Vernon 1974).

The instructions to the jury in the guilt/innocence portion of the trial included an abstract instruction on the law of parties. The application paragraph, however, entirely failed to apply, in any form, the applicable portions of the abstract definition to specific facts of the case. The record reflects that the State did not object to the charge in that form. We find that the issue of appellant's guilt as a party was not properly before the jury, and therefore the jury was only authorized to convict appellant solely by his conduct alone. *Walker v. State*, 823 S.W.2d 247 (Tex.Crim. App.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1481, 117 L.Ed.2d 624 (1992); *Jones v. State*, 815 S.W.2d 667 (Tex.Crim.App.1991).

█ In order to sustain the conviction, we must view all of the evidence in the light most favorable to the verdict and conclude that any rational trier of fact could have found that appellant, *personally*, intentionally and knowingly financed and invested funds appellant knew and believed were intended to further the commis-

sion of the offense of possession of a usable quantity of marihuana of between fifty and two hundred pounds, *beyond a reasonable doubt.* Even the very best light placed upon the entirety of the evidence before the jury cannot sustain this burden. The evidence is simply non-existent that appellant engaged in any of the conduct, as alleged in the indictment and application paragraph, in an individual or personal capacity. Point of error one is sustained.

In sustaining appellant's first point of error as we have, we find it unnecessary to address appellant's remaining points of error. Finding the evidence insufficient to sustain the conviction in the instant case, we reverse the judgment of the trial court and remand for entry of a judgment of acquittal. *See, Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978); *Boozer v. State,* 717 S.W.2d 608, 611 (Tex.Crim.App. 1984).

REVERSED AND REMANDED TO THE TRIAL COURT FOR ENTRY OF A JUDGMENT OF ACQUITTAL.

BROOKSHIRE, Justice, concurring.

This concurring opinion readily agrees with the result reached by the majority opinion. An important witness proffered by the prosecution testified that he had observed the appellant, Cox, at the crucial and material times in question. The majority opinion states that the appellant was being closely watched by Sergeant John Fountain, who was a member of the task force involved. This sergeant testified that Lovelady and Perry, two actors in this alleged felony offense and who had been indicted, had left the restaurant. Thereafter, Fountain testified that the appellant was seated at a table near or against the wall in the west end of the restaurant. Cox was facing the direction of the motel. The reference to the motel was elicited because the marijuana transaction took place in the motel. The evidence however can be construed that the appellant apparently only seemed or appeared to be looking in the direction of the motel.

Fountain further testified that he observed the appellant, Cox, in the restaurant for a number of minutes. Observing the appellant's actions the whole time, Fountain stated that as far as he knew Cox simply sat there in the restaurant and looked out the window. The most that Fountain testified to that could possibly be considered as being inculpatory in nature was that appellant was sitting in a section of the restaurant where no other patrons were then seated. At crucial times, the appellant looked through the window that opened out on the side of the motel in the parking area which was adjacent to the two rooms that were involved in the marijuana transaction. Fountain had to wait until the other members of the task force actually entered the restaurant and affirmatively told him (Fountain) that the marijuana transaction deal had gone down. This information was given to Fountain so that Fountain could arrest the appellant. Fountain conceded that at the time of appellant's arrest the appellant did not run, did not have any guns or weapons on his person, did not have any drugs or contraband on his person, and was really not doing anything. The prosecution did not prove up the ownership of the station wagon that appellant had been driving.

In view of the necessary and essential elements of the felony offense of illegal expenditure, the State, from the standpoint of the evidence in the record, simply did not make their case. TEX.HEALTH & SAFETY CODE ANN. § 481.126 (Vernon Supp.1992). In substance the indictment against the appellant charged that he knowingly and intentionally financed and invested funds that the appellant knew and believed were intended to further the commission of an offense, namely the possession of a usable quantity of marijuana of less than 200 pounds, but at least 50 pounds. There was a consolidated trial in which the appellant and two other accused persons, namely James Lovelady and Robert Perry, were tried. The State's case regarding Cox is deficient in the proof in that the essential elements of the offense of illegal investment were not shown.

On balance, it seems correct to state that the record reflects the appellant drove the vehicle involved to the restaurant, got out of the vehicle, and sat at a table facing the motel. The State has failed to show that the appellant intentionally and knowingly committed the crime set out in the indictment. The State failed to show that the appellant financed or invested any funds used by the other two men in the marijuana. deal at the motel. The record fails to show that the appellant knew or believed that any of the funds were intended, so far as he knew, to further the commission of the offense of the aggravated possession of the quantity of marijuana which was at least 50 pounds, but less than 200 pounds. Officer Fountain testified as follows:

Q My understanding was that when the officers, other officers said only one was coming?

A [Officer Fountain] I was aware that there was three people, possibly three people in the vehicle.

Q Okay. Could Mr. Cox have been a hitch hiker?

A Could he have been, why he could have been anything.

Q Well, that's my point. He could have been anything.

A I'm telling you what I saw. I can not add to or take away.

Q I understand. But it is possible that he could have been anybody?

A Anything is possible, yes sir.

In my opinion it is not necessary to reach the question of the application paragraph of the law to the facts in this appeal.

I opine that under this record the test set down in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Jackson v. State,* 672 S.W.2d 801 (Tex.Crim. App.1984) are not met in that a rational juror could not have found the essential elements of the indicted offense beyond a reasonable doubt even when viewing the evidence in a light favorable to the verdict. It seems to me that the proper disposition of this appeal must be based on *Jackson v. Virginia, supra,* and *Jackson v. State, supra,* without regard to the application paragraph and without relying on *Jones v.*

*State,* 815 S.W.2d 667 (Tex.Crim.App.1991); *Walker v. State,* 823 S.W.2d 247 (Tex.Crim. App.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1481, 117 L.Ed.2d 624. (1992).